UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JOANNA P. MATTSON, on behalf of herself
and all others similarly situated,

                    Plaintiff,

    v.

MILLIMAN, INC.; THE BOARD OF
DIRECTORS OF MILLIMAN, INC.; THE
MILLIMAN INVESTMENT COMMITTEE,
and its members; THE MILLIMAN
ADMINISTRATIVE COMMITTEE, and its
members, Does 1-30,

                    Defendants.

NO.

COMPLAINT – CLASS ACTION

## I.    INTRODUCTION

1.    Plaintiff Joanna P. Mattson brings this action under 29 U.S.C. §1132(a)(2) and (3), individually and on behalf of the Milliman, Inc. Profit Sharing and Retirement Plan (the "Plan") and a class of participants and beneficiaries of the Plan affected by the challenged conduct of the Milliman Defendants (as defined below). Plaintiff brings this action for breach of fiduciary duty under the Employee Retirement Income Security Act, 29 U.S.C. §§1001-1461 ("ERISA"), against Defendants Milliman, Inc., the Board of Directors of Milliman, Inc. and its members, the committee that selects investment options for the Plan (the "Investment Committee") and its members, and the committee that administers the Plan (the "Administrative Committee") and its members (collectively, "Milliman" or "Milliman Defendants").

COMPLAINT – CLASS ACTION - 1

2.      The Milliman Defendants are fiduciaries of the Plan. Accordingly, when constructing an investment line-up for the Plan, Milliman must independently investigate and regularly monitor each of the Plan's investment options with the care and skill of a prudent investor. The Milliman Defendants breached their fiduciary duty by failing to prudently monitor and failing to remove three of the Plan's poorly performing investment options.

3.      The Investment Committee is one of the Plan's fiduciaries that designates the investment options available under the Plan. The Investment Committee selected a suite of target risk funds:  the Unified Trust Wealth Preservation Strategy Target Growth Fund (the "Aggressive Fund"), Unified Trust Wealth Preservation Strategy Target Moderate Fund (the "Moderate Fund"), and Unified Trust Wealth Preservation Strategy Target Conservative Fund (the "Conservative Fund") as three investment options for Plan participants (together, the "Unified Funds").

4.      The Unified Funds represent a series of risk-based asset allocation funds that the Unified Trust Company offers exclusively for defined contribution and defined benefit plans. The Unified Funds are "target risk funds" (also known as "lifestyle funds"), which is a type of fund designed to "target" a predetermined risk level that reflects an investor's tolerance to risk.[1]

5.      The Unified Funds allocate their assets across a mix of equity securities, bonds, or cash based on the desired level of target risk. The higher the tolerance for risk, the higher the allocation is to equity securities.

6.      In 2013 the Milliman Defendants placed the three Unified Funds on the Plan. Having only been launched in November 2012, the Unified Funds were brand new, had no investment track record, and were untested.

---

[1] A target "risk" fund, which targets a particular risk level, should not be confused with a target "date" fund, which targets the investor's anticipated retirement date. A target risk fund remains at its targeted risk level for the life of the fund – i.e., if it is an aggressive fund, it remains aggressive. The portfolio of a target date fund, by contrast, gradually evolves over time from a more aggressive risk allocation to a more conservative risk allocation as the fund moves closer to the target date (i.e., the investor's planned retirement date).

COMPLAINT – CLASS ACTION - 2

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

7. By the end of 2013, the Plan was the sole investor in the Moderate and Conservative Funds and represented about 97% of the assets of the Aggressive Fund, according to Department of Labor ("DOL") filings.

8. Milliman's investment adviser affiliate, Milliman Financial Risk Management LLC, is the sub-adviser to the Unified Funds offered by the Plan.

9. During the nine years since their introduction to the Plan in 2013, the Unified Funds have significantly underperformed meaningful benchmarks, which include both benchmark indexes (including the index preferred by the Unified Funds' investment manager itself) and comparable target risk funds.

10. For example, in the nine years since 2013, the Aggressive Fund underperformed one of its key investment benchmarks, the Morningstar Aggressive Target Risk Index, every single year except 2018. Likewise, the Moderate Fund also underperformed one of its key investment benchmarks, the Morningstar Moderately Aggressive Target Risk Index, every single year except 2018.

11. But mere underperformance is not the whole story -- the depth and breadth of the underperformance is as jarring as it is incomprehensible. Since January 1, 2013, the Aggressive Fund's investment return underperformed a key investment benchmark by a cumulative total of over 62%; and it ranks in the bottom 90th percentile among the funds in its peer universe, according to the highly regarded financial services and research firm, Morningstar, Inc. (hereinafter, "Morningstar")[2]. In the investment world, this level of underperformance cannot be justified.

12. Despite this abysmal record of significant underperformance year-after-year, and a marketplace teeming with hundreds of better performing investment options, the Milliman Defendants did not remove any of the Unified Funds from the Plan.

---

[2] Morningstar is the leading provider of independent investment research products (e.g., data and research insights on managed investment products, publicly listed companies, and private capital markets) for individual investors, financial advisors, asset managers, retirement plan providers and sponsors, and institutional investors in the private capital markets in North America, Europe, Australia, and Asia.

COMPLAINT – CLASS ACTION - 3

13.     The Milliman Defendants' ongoing decision to take no action is both imprudent and injurious to the Plan and its participants, including Plaintiff Mattson.

14.     Over the last five-year period[3], the three Unified Funds have performed worse than 70% to 90% of funds within their recognized peer universe, according to Morningstar.

15.     No prudent investor would have sat idly by in the face of such underperformance.

16.     This failure to act has had devastating consequences for participants' retirement accounts. To date, these Unified Funds have taken in nearly a quarter billion dollars of retirement investments from Plan participants. The Milliman Defendants' imprudent decision to retain the Unified Funds has simultaneously impaired the Plan's overall investment performance and squandered millions in participants' retirement savings.

17.     To remedy Milliman's breach of fiduciary duty, Plaintiff brings this action under 29 U.S.C. §1132(a)(2) and (3), individually, on behalf of the Plan, and as a representative on behalf of a class of participants and beneficiaries of the Plan to enforce the Milliman Defendants' personal liability under 29 U.S.C. §1109(a), to make good to the Plan all losses resulting from each breach of fiduciary duty occurring during the time period from January 13, 2016 to the date of judgment (the "Class Period"). In addition, Plaintiff seeks such other relief for the Plan as the Court may deem appropriate.

## II.     PARTIES

### A.     Plaintiff

18.     Joanna P. Mattson brings this suit in a representative capacity on behalf of the Plan pursuant to 29 U.S.C. §1132(a), seeking appropriate relief under 29 U.S.C §1109 to protect the interests of the entire Plan. Plaintiff Mattson was a participant in the Plan, as defined in 29 U.S.C. §1002(7), during the Class Period. Plaintiff Mattson suffered individual injury by investing in the Plan's poorly performing Wealth Preservation Strategy Target Risk Moderate Fund.

---

[3] Because the Unified Funds have not been in existence for ten-years, peer rankings for the ten-year period are unavailable.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

**B.     Defendant**

19.     Milliman, Inc. is headquartered in Seattle, Washington, and is an independent risk management, benefits, and technology firm with offices in major cities around the globe. Milliman, Inc. is the Plan's sponsor. Milliman, Inc. acts through a Board of Directors.

20.     The Investment Committee is responsible for designating the investment options available under the Plan. Current and former members of the Investment Committee are fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A) because they exercised discretionary authority and/or discretionary control respecting management of the Plan.

21.     The Administrative Committee administers the Plan. Current and former members of the Administrative Committee are fiduciaries of the Plan under 29 U.S.C. § 1002(21)(A) because they exercised discretionary authority and/or discretionary control respecting management of the Plan.

22.     Because Plaintiff is currently unaware of the identities of the individual members of the Board of Directors, the Investment Committee, and the Administrative Committee, those individuals are collectively named as Defendants Does 1-30. Plaintiff will substitute the real names of the Does when they become known to Plaintiff. To the extent the Milliman Defendants delegated any of their fiduciary functions to another person or entity, the nature and extent of which has not been disclosed to Plaintiff, the person or entity to which the function was delegated is also a fiduciary under 29 U.S.C. § 1002(21)(A) and thus alleged to be a Doe Defendant.

**III.     JURISDICTION, VENUE, AND STANDING**

23.     This Court has exclusive jurisdiction over the subject matter of this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. §1331 because it is an action under 29 U.S.C. § 1132(a)(2) and (3).

24.     This District is the proper venue for this action under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because it is the District in which the subject Plan is administered and where

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

at least one of the alleged breaches took place. It is also the District in which Defendant Milliman resides.

25.     As a Plan participant and holder of the Wealth Preservation Strategy Moderate Fund, Plaintiff has standing to bring claims on behalf of the Plan pursuant to 29 U.S.C. §1132(a)(2), as she is a participant seeking appropriate relief under 29 U.S.C. §1109. Thus, Plaintiff brings this suit under §1132(a)(2) in a representative capacity on behalf of the Plan as a whole and seeks remedies under §1109 to protect the entire Plan.

26.     Plaintiff has standing to bring claims on behalf of the holders of all the Unified Funds because the alleged harms to holders of the other Unified Funds can be traced to the same challenged conduct: the imprudent process Milliman Defendants used to select, monitor, and retain the suite of Unified Funds. This singular conduct with respect to the Unified Funds harmed each of the holders of the specific Unified Funds discussed in this Complaint.

## IV.     ERISA'S FIDUCIARY STANDARDS

### A.     Fiduciary Duties of Prudence and Loyalty

27.     ERISA imposes strict fiduciary duties of prudence and loyalty upon the Milliman Defendants as fiduciaries of the Plan. 29 U.S.C. § 1104(a). These duties apply to all fiduciary acts, including Milliman's monitoring and retention of investment options for the Plan.

28.     ERISA's duty of prudence requires fiduciaries to discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. §1104(a)(1)(B).  Accordingly, fiduciaries must vigorously and independently investigate each of the Plan's investment options with the skill of a prudent investor.

29.     As part of its fiduciary duty, Milliman "has a continuing duty to monitor [Plan] investments and remove imprudent ones" that exists "separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly

Byrnes ♦ Keller ♦ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington  98104
(206) 622-2000

monitor investments and remove imprudent ones." *Id.* at 530.  If an investment is imprudent, Milliman "must dispose of it within a reasonable time." *Id.*

30.     ERISA's duty of loyalty requires a fiduciary "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan[.]" *See* 29 U.S.C. § 1104(a)(1)(A); *see also* 29 U.S.C. § 1103(c)(1) ("the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan").

31.     ERISA's fiduciary duties are "the highest known to the law" and must be performed "with an eye single" to the interests of participants. *Donovan v. Bierwirth*, 680 F.2d 263, 271-272 & n.8 (2d Cir. 1982). Thus, "in deciding whether and to what extent to invest in a particular investment, a fiduciary must ordinarily consider *only* factors relating to the interests of plan participants and beneficiaries . . . . A decision to make an investment may not be influenced by [other] factors unless the investment, when judged *solely* on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan." Dept of Labor ERISA Advisory Op. 88-16A, (Dec. 19, 1988) (emphasis added).

### B.     Fiduciary Liability Under ERISA

32.     Under 29 U.S.C. § 1109, fiduciaries to the Plan are personally liable to make good to the Plan any harm caused by their breaches of fiduciary duty. Section 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

COMPLAINT – CLASS ACTION - 7

### C.  Co-Fiduciary Liability

33.     ERISA provides for co-fiduciary liability where a fiduciary knowingly participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under 29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty by a co-fiduciary if:

i.     he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

ii.    by his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

iii.   he has knowledge of a breach by such other fiduciary unless he makes reasonable efforts under the circumstances to remedy the breach.

## V.    THE PLAN

34.     The Plan is a defined contribution plan that includes a "deferred arrangement" as described in Section 401(k) of the Internal Revenue Code, I.R.C. § 401(k) (1986) (the "Code") and is subject to the provisions of ERISA.  Milliman, Inc. is the sponsor of the Plan.

35.     The Plan provides for retirement income for approximately 4,500 participants, comprised of Milliman employees, former employees, and their beneficiaries (the "Plan participants"). A participant's retirement account balance depends on contributions made by each employee, Milliman's matching contributions, and the performance of investment options net of fees and expenses. Accordingly, poor investment performance can significantly impair the value of a participant's account. Over time, even seemingly small differences in performance can result in a significant difference in the amount of savings available at retirement. The Milliman Defendants control the selection and retention of the Plan's investment options.

36.     The Plan has approximately $1.7 billion in assets under management.

37.     Plan participants have invested nearly $250,000,000 in the Unified Funds as of November 30, 2020. In 2020, the Plan identified the following Unified Funds along with the amount of Plan assets invested in each fund:

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

| Fund Name | Plan Option Assets |
|---|---|
| Unified Trust Wealth Preservation Strategy Target Growth | $89,218,002 |
| Unified Trust Wealth Preservation Strategy Target Moderate | $93,384,339 |
| Unified Trust Wealth Preservation Strategy Target Conservative | $56,944,846 |

38.     With $1.7 billion in assets, the Plan has tremendous leverage to demand and receive superior investment products and services. But the Milliman Defendants did not use their leverage to identify and select prudent target risk options for Plan participants. Instead, the Milliman Defendants opted for poorly performing options for which they serve as sub-adviser.

VI.     TARGET RISK FUNDS

39.     The primary investment objective of a target risk fund is to seek long-term capital growth consistent with a level of risk that matches the investor's risk tolerance. The name of a fund can sometimes refer to its level of risk. For example, a fund with a name like "Growth" or "Aggressive" is designed for investors who have a higher tolerance for risk than an investor who selects a fund with a name like "Moderate" or "Conservative."

40.     Target risk funds, such as the Unified Funds, may pursue their objective by investing in other underlying funds such as mutual funds, exchange traded funds ("ETFs"), and collective investment funds. Funds that invest in other funds are commonly referred to as "a fund of funds."  Target risk funds may also pursue their objective by investing directly in securities, such as Microsoft, Apple, and Amazon.

41.     Target risk funds seek to achieve their risk objectives by dividing their assets into what the fund's portfolio manager deems to be an optimal mix of equity and fixed income securities. Some funds may also transact in funds tied to futures and options contracts. Morningstar recognizes that a fund with an "aggressive" target risk will invest 85% or more of its assets in equity securities (e.g., common and preferred stock or pooled funds that invest in the same); a fund with a "moderately aggressive" target risk will invest between 70% and 85% in

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

equity securities; and a fund with a "moderate" target risk will invest between 50% and 70% in equity securities.

42.     The equity allocation is intended to provide exposure to a specific market segment. Typically, those segments include U.S. large- and small-capitalization companies and international (non-U.S.) developed and emerging markets. The portfolio manager's aim should be to build a portfolio that provides exposure to factors commonly tied to a stock's potential for enhanced risk-adjusted returns relative to the market. Those factors include, but are not limited to, value, quality, momentum, size, and low volatility.

43.     The fixed income allocation is intended to provide diversified exposure across a wide range of market sectors, including U.S. government obligations, corporate bonds, other U.S. aggregate bond sectors (including mortgage- and asset-backed securities), and emerging market and international fixed income issues. The portfolio manager's aims should be to provide broadly diversified fixed income exposure and construct a portfolio to enhance issuer diversification and liquidity.

44.      A fund's portfolio manager adjusts their allocations among investments and asset classes based on their analysis of various market conditions.  Factors that a portfolio manager may consider include, but are not limited to, market trends, perceived risk, their outlook for a given market capitalization, and the underlying funds' performances in various market conditions.

45.     Without distinctions in portfolio holdings, all target risk funds would own identical investment portfolios and have nearly identical investment performance. Artful asset allocation and superior investment selection are the skills that drive investment performance and distinguish the better performing target risk funds from the underperforming ones. Bad asset allocation and poor investment selection are what drive underperformance.

## VII.   THE UNIFIED TARGET RISK FUNDS

46.     The Unified Funds were launched in November 2012 as a series of risk-based asset allocation funds that are offered exclusively for defined contribution and defined benefit plans.

COMPLAINT – CLASS ACTION - 10

47.     In 2013, Milliman selected the Aggressive Fund, the Moderate Fund, and the Conservative Fund as three investment options for Plan participants.  They are the only options in the Plan that give participants the ability to invest using specific target risk strategies. In other words, Plan participants who want to pursue a target risk investment strategy have no choice other than to invest in one of the Unified Funds.

48.     Further, as noted above, the Unified Funds are sub-advised by Milliman's investment adviser affiliate, Milliman Financial Risk Management LLC.

49.     Like nearly all target risk funds, each Unified Fund is structured as a pooled investment fund.

50.     Additionally, the portfolio manager of each Unified Fund elects not to invest directly in individual securities but instead invests in other pooled funds such as equity funds, bond funds, money market funds, or funds that deal in derivatives contracts. The underlying funds in turn invest in a combination of individual investments to offer exposure to a mix of asset classes such as U.S. stocks (large-caps as well as small-caps), international stocks, U.S. bonds, international bonds, cash-like securities, and options and futures contracts.

## VIII.   THE UNIFIED FUNDS' BENCHMARKS

### A.     Three Independently Managed Funds Within the Unified Funds' Peer Universe and the Morningstar Target Risk Indexes Are Meaningful Benchmarks

51.     As explained more fully below, Plaintiff identifies as meaningful benchmarks three independently managed target risk funds that are grouped together with each of the Unified Funds in the same peer universe known as a Morningstar Category, and a representative Morningstar Target Risk Index (e.g., aggressive, moderately aggressive, moderate) that corresponds to the target risk of each Unified Fund.

52.     Moreover, according to Morningstar, each Morningstar Target Risk Index listed herein is the index preferred by Unified Trust Company as the benchmark for the Unified Funds.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

53.     As the benchmarks preferred by Unified Trust Company itself, the Morningstar Target Risk Indexes are the proper benchmarks to use as comparators that establish the substantial underperformance of the Unified Funds and related breach of fiduciary duty by Defendants.

54.     Accordingly, each of these benchmarks provide a sound basis for comparison to its corresponding Unified Fund.

**B.     Portfolio Analysis is the Key to Morningstar Peer Universe Categories**

55.     Target risk funds that Morningstar has classified as being in the same peer universe as its corresponding Unified Fund are embodied in what it calls a "Morningstar Category."

56.     Funds within a Morningstar Category make for sound comparators because Morningstar selects funds for a Morningstar Category using a proprietary classification methodology that compares funds based on their underlying portfolio holdings. To belong in the same Morningstar Category, Morningstar requires that each fund must have comparable underlying portfolio holdings dating back at least three years.

57.     Morningstar has created the following Morningstar Categories for target risk funds based on the amount of their holdings in equity securities:

| Fund Categories |
| --- |
| Morningstar Allocation 85%+ Equity |
| Morningstar Allocation 70-85% Equity |
| Morningstar Allocation 50%-70% Equity |

58.     Based on its assessment of the Unified Funds' investment portfolios, Morningstar has classified each of the Unified Funds in the following Morningstar Category:

| Fund Name | Fund's Category |
| --- | --- |
| Unified Trust Wealth Preservation Strategy Target Growth | Morningstar Allocation 85%+ Equity |
| Unified Trust Wealth Preservation Strategy Target Moderate | Morningstar Allocation 70-85% Equity Allocation |
| Unified Trust Wealth Preservation Strategy Target Conservative | Morningstar Allocation 50-70% Equity |

COMPLAINT – CLASS ACTION - 12

59. The Morningstar Categories listed in the table above also match the same asset class categories that the Milliman Plan has assigned to the Unified Funds.

60. Within these three Morningstar Categories are hundreds of funds available to the Plan that offer the same risk profiles as the Unified Funds (e.g., aggressive, moderate).

61. A fund's name is not determinative of its Morningstar Category or Morningstar Benchmark Index. Accordingly, Morningstar may assign a fund with "conservative" in its name to a universe of funds that pursue a moderate target risk strategy (e.g., the Unified Trust Wealth Preservation Strategy Target Conservative Fund).

62. More specifically, given its analysis of each fund's investment objective and the allocation of their underlying investment portfolios, Morningstar has grouped each of the following funds in the same Category as the corresponding Unified Fund (hereinafter, the "Comparator Funds"), as follows:

| **Morningstar Allocation – 85%+ Equity** |
| --- |
| Associated Aggressive Growth Life Stage |
| Associated ASAP Growth Strategy |
| Transamerica Long Horizon - CTF |
| |
| **Morningstar Allocation – 70-85% Equity** |
| Alerus Moderate Growth Institutional |
| Associated Conservative Growth Life Stage |
| State Street Aggressive Strategic Balanced Securities Lending Fund Class I |
| |
| **Morningstar Allocation – 50-70% Equity** |
| Alerus Conservative Growth Institutional |
| Associated Growth Balanced Life Stage |
| Benefit FCI Life Strategy Growth Class B |

63. Like their corresponding Unified Fund, each of the Comparator Funds is available for inclusion in the Plan. Like their corresponding Unified Fund, each is a target risk fund organized as a collective investment trust and structured as a fund of funds, with each investing primarily in other funds such as mutual funds, ETFs, and collective investment funds.

64. Like its corresponding Unified Fund, each of the Comparator Funds invest in a diversified portfolio comprised primarily of investments from different market sectors, including

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

U.S. and international large- and small-cap stocks, U.S. and international bonds, and cash.

65.     Based on the similarities of the Comparator Funds' structures, the Milliman Plan's recognition of each Morningstar Category as the appropriate category for the Unified Funds, and Morningstar's inclusion of each of the Comparator Funds in the same Morningstar Category as each corresponding Unified Fund, the Comparator Funds represent meaningful comparators.

### C.     Morningstar Identifies the Morningstar Target Risk Indexes as Benchmarks

66.     Morningstar has created benchmark indexes against which to compare the investment performance of any given fund. It assigns a fund to a benchmark index based on the Morningstar Category to which the fund is assigned.

67.     The following Morningstar Target Risk Indexes are meaningful benchmarks because Morningstar has identified these indexes as the benchmarks with which to compare the investment performance of each Unified Fund:

| Fund Name | Morningstar's Category Benchmark |
|---|---|
| Unified Trust Wealth Preservation Strategy Target Growth | Morningstar Aggressive Target Risk Index |
| Unified Trust Wealth Preservation Strategy Target Moderate | Morningstar Moderately Aggressive Target Risk Index |
| Unified Trust Wealth Preservation Strategy Target Conservative | Morningstar Moderate Target Risk Index |

68.     In addition, according to Morningstar, the Unified Trust Company —the investment manager for the Unified Funds —prefers the Morningstar Target Risk Indexes listed above as the benchmark for the Unified Funds.

69.     Furthermore, Morningstar measures each Unified Fund and their Comparator Funds against these same Morningstar benchmarks.

70.     By identifying these benchmarks, including the benchmark preferred by the Unified Funds' own investment manager, Plaintiff has identified meaningful benchmarks that provide a sound basis of comparison to the Unified Funds as well as reveal and confirm the substantial

COMPLAINT – CLASS ACTION - 14

underperformance of the Funds.

## IV.    MILLIMAN BREACHES

### A.    The Milliman Defendants Imprudently Retained the Unified Funds

71.    The Milliman Defendants first selected and included the Unified Funds in the Plan during 2013. By the end of 2013, Plan participants had invested over $180 million in the three Unified Funds.

72.    Notably, according to DOL filings, by the end of 2013, the Plan was the sole investor in the Moderate and Conservative Funds and comprised about 97% of the assets of the Aggressive Fund.

73.    Post-selection, the Milliman Defendants were required by law to monitor the funds with the skill of a prudent expert to determine whether their investment performance remains in line with a meaningful investment index and funds within a recognized peer universe.

74.    For a prudent fiduciary, investment options that, on average, underperform their benchmarks or peer universe over rolling 3- or 5-year periods are candidates for removal. Typically, such guidelines are outlined in a plan's investment policy statement or in a pension consultant's recommendations.

75.    Had the Milliman Defendants fulfilled their duty with the care and skill of a prudent fiduciary, they would have seen in real-time that the Aggressive Fund, the Moderate Fund, and the Conservative Fund had significantly underperformed their Comparator Funds for at least three years prior to the commencement of the Class Period.

76.    In the three-year period from 2013 through 2015, the poor performance of the three Unified Funds cost the Plan and its participants over $20 million in lost retirement savings when compared to what they would have earned in one or more of the Comparator Funds.

77.    Any fiduciary properly monitoring the Plan would have seen that the poor performance warranted the selection of a new target risk options.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

78.     Despite the financial rout, Milliman continued its commitment to the Unified Funds. For reasons that defy any prudent explanation, Milliman failed to replace any of the Unified Funds with any one of the many prudent alternatives.

79.     Not unexpectedly, each Unified Fund has continued to languish at the bottom of its respective peer universe, capping nearly a decade of continuous poor performance.

80.     **Tables 1.a, 2.a, and 3.a** below demonstrate the underperformance of each Unified Fund compared to the Morningstar Target Risk Indexes and the Comparator Funds for the three-year period prior to the Class Period, i.e., from January 1, 2013, through December 31, 2015.

81.     **Tables 1.b, 2.b, and 3.b** below demonstrate the underperformance of each Unified Fund compared to Morningstar Target Risk Indexes and the Comparator Funds on both an annualized and cumulative basis for the Class Period, i.e., from January 1, 2016, through December 31, 2021.

82.     Together, **Tables 1.a and 1.b, 2.a and 2.b, and 3.a and 3.b** demonstrate that the substantial underperformance of the Unified Funds relative to meaningful benchmarks has persisted for a nine-year period – nearly a decade of unabated imprudence.

83.     **Tables 1.c., 2.c, and 3.c** below quantify how Milliman's decision to retain the Unified Funds squandered millions of dollars of Plan participants' retirement savings. Plaintiff demonstrates the monetary impact of Milliman's decision by showing how the growth of an investment in each Unified Fund compares to the growth of the same investment in the respective Comparator Funds from January 1, 2016, through December 31, 2021.

84.     All the data presented in each of the Tables in this Complaint was available in real-time to the Milliman Defendants throughout the Class Period.

85.     The Comparator Funds listed in each of the Tables below are managed by reputable banks and investment advisers and are available to all large retirement plans, including Milliman's Plan. The Milliman Defendants would not have had to scour the market to find them. On the

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

contrary, the Unified Funds' performance was so bad that the Milliman Defendants likely would have had to scour the market to find offerings as poorly performing as the Unified Funds.

86.     The overall depth of the Unified Funds' underperformance raises a plausible inference that Milliman's monitoring process was tainted by a lack of competency and/or complete failure of effort.

87.     Plaintiff did not have knowledge of all material facts necessary to understand that the Milliman Defendants breached their fiduciary duties until shortly before filing this Complaint. Further, Plaintiff does not have actual knowledge of the specifics of the Defendants' decision-making processes with respect to the Plan, including the processes for selecting, monitoring, and removing Plan investments, because this information is solely within the possession of the Defendants at present. For purposes of this Complaint, Plaintiff has drawn reasonable and plausible inferences regarding these processes based upon the facts alleged in this Complaint.

### 1.     Aggressive Fund

88.     Since its introduction to the Plan in 2013, the Aggressive Fund's underperformance has undermined the retirement savings of Plan participants. **Table 1.a** below illustrates three years of underperformance from January 1, 2013, through December 31, 2015, relative to the Morningstar benchmark and the Comparator Funds.

**Table 1.a**

| Investment Name | Cumulative Return | Annualized Return |
|---|---|---|
| Unified Trust Wealth Preservation Strategy - Growth I | 19.02% | 5.98% |
| Associated Aggressive Growth Life Stage | 34.42% | 10.37% |
| Associated ASAP Growth Strategy | 37.29% | 11.14% |
| Transamerica Long Horizon - CTF | 37.03% | 11.08% |
| Morningstar Aggressive Target Risk Index | 27.54% | 8.45% |

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

89.     Any fiduciary monitoring the Plan would have used the Morningstar Aggressive Target Index and Comparator Funds listed in **Table 1.a** as benchmarks for the performance of the Aggressive Fund. At the end of the three-year period, the Milliman Defendants would have seen that the Aggressive Fund had underperformed its benchmark every single year for a cumulative total of 8.5%. Comparing the best performing fund among the Comparator Funds, the fiduciaries would have seen that the Aggressive Fund's cumulative underperformance exceeded 18%. Despite this dreadful underperformance, the Milliman Defendants did not remove the Aggressive Fund from the Plan.  Predictably, the fund's underperformance continued throughout the Class Period.

90.     **Table 1.b** illustrates the underperformance of the Aggressive Fund from January 1, 2016, through December 31, 2021, on an annualized and cumulative basis relative to Comparator Funds and the Morningstar Benchmark Index. The Aggressive Fund underperformed its category index, the Morningstar Aggressive Risk Index, every single year except 2018, bringing the total to eight of nine years of underperformance relative to its Morningstar benchmark.

**Table 1.b**

| Investment Name | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | Cumulative |
|---|---|---|---|---|---|---|---|
| Unified Trust Wealth Preservation Strategy - Growth | 4.92% | 20.16% | -6.18% | 18.16% | 6.10% | 15.87% | 71.80% |
| Associated Aggressive Growth Life Stage | 8.78% | 22.85% | -6.72% | 27.94% | 24.45% | 17.47% | 133.17% |
| +/- Unified Growth | -3.86% | -2.69% | +0.54% | -9.78% | -18.35% | -1.60% | -61.37% |
| Associated ASAP Growth Strategy | 8.59% | 23.27% | -6.58% | 27.11% | 23.23% | 18.14% | 131.40% |
| +/- Unified Growth | -3.67% | -3.11% | -0.40% | -8.95% | -17.13% | -2.27% | -59.60% |
| Transamerica Long Horizon – CTF | 8.23% | 20.01% | -8.03% | 26.31% | 22.77% | 16.96% | 116.65% |

Byrnes ♦ Keller ♦ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington  98104
(206) 622-2000

| Investment Name | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | Cumulative |
|---|---|---|---|---|---|---|---|
| +/- Unified Moderate | -3.31% | +0.15% | -1.85% | -8.15% | -16.67% | -1.09% | -34.85% |
| Morningstar Aggressive Target Risk Index | 11.33% | 21.95% | -8.17% | 25.91% | 13.26% | 17.30% | 108.56% |
| +/- Unified Aggressive | -6.41% | -0.79% | +1.99% | -7.75% | -7.16% | -1.43% | -36.76% |

91.    When compared to the investment performance of its peers within the Allocation-85%+ Equity Funds universe, the breadth of the Aggressive Fund's underperformance is a stunning if not a complete failure of Milliman's fiduciary process. Based on Morningstar data, as of December 31, 2021, the Aggressive Fund performed worse than 90% of all peer funds over the preceding 5-year period, worse than 95% of all peer funds over the preceding 3-year period, and worse than 82% of all peer funds over the preceding 1-year period. Because none of the Unified Funds has been in existence for ten years, Morningstar's ten-year rankings are not yet available. However, given the Aggressive Fund's dreadful 1-year and 3-year rankings, once Morningstar releases its ten-year rankings in 2022, it is highly likely the Fund will finish in the bottom 80th or 90th percentile among its peers for the ten-year period.

92.    During the Class Period, the assets of the Aggressive Fund averaged approximately $75 million. **Table 1.c** demonstrates the financial significance of this underperformance by showing the growth of $75 million invested in the Aggressive Fund as compared to the growth of $75 million invested in each of the Comparator Funds from January 1, 2016, through December 31, 2021.

**Table 1.c**

| Investment Name | Cumulative Return | Annualized Return | Ending Value |
|---|---|---|---|
| Unified Trust Wealth Preservation Strategy - Growth | 71.80% | 9.44% | $128.8 million |
| Associated Aggressive Growth Life Stage | 133.17% | 15.15% | $174.8 million |

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

| Investment Name | Cumulative Return | Annualized Return | Ending Value |
|---|---|---|---|
| Associated ASAP Growth Strategy | 131.40% | 15.01% | 173.5 million |
| Transamerica Long Horizon - CTF | 116.65% | 13.75% | $162.4 million |
| Morningstar Aggressive Target Risk Index TR | 108.56% | 13.03% | $156.4 million[4] |

93.     Milliman's failure to remove the Aggressive Fund has cost Plan participants approximately $46 million when compared to the performance of the best performing fund in the group. *See Tibble v. Edison Int'l*, 2017, No. CV 07-5359, WL 3523737, at *13 (C.D. Cal. Aug. 16, 2017) ("Among several reasonable and alternative investment strategies, the court should presume that the funds would have been used in the most profitable of these.") (Citation and internal quotation marks omitted).

**2.      Moderate Fund**

94.     Since its introduction to the Plan in 2013, the Moderate Fund's underperformance has also undermined the retirement savings of Plan participants. **Table 2.a** below illustrates three years of underperformance from January 1, 2013, leading up to the beginning of the Class Period on December 31, 2015, relative to benchmark indexes and the Comparator Funds.

**Table 2.a**

| Investment Name | Cumulative Return | Annualized Return |
|---|---|---|
| Unified Trust Wealth Preservation Strategy – Moderate | 20.51% | 6.42% |
| Alerus Moderate Growth Institutional | 25.39% | 7.83% |
| Associated Conservative Growth Life Stage | 32.15% | 9.74% |
| State Street Aggressive Strategic Balanced Securities Lending Fund Class I | 37.56% | 11.21% |
| Morningstar Moderately Aggressive Target Risk Index | 23.12% | 7.18% |

---

[4] For illustrative purposes only. Investors cannot invest directly in an Index.

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

95.     Any fiduciary monitoring the Plan would have used the Morningstar Moderately Aggressive Target Index and Comparator Funds listed in **Table 2.a** as benchmarks for the performance of the Moderate Fund. At the end of the three-year period, the Milliman Defendants would have seen that the Moderate Fund had underperformed its benchmark every single year for a cumulative underperformance total of 2.6%. Compared to the best performing fund among the Comparator Funds the underperformance exceeded 17%. Despite this dreadful underperformance, the Milliman Defendants did not remove the Moderate Fund from the Plan. Predictably, the fund's underperformance continued throughout the Class Period.

96.     **Table 2.b** illustrates the underperformance of the Moderate Fund from January 1, 2016, through December 31, 2021, on an annualized and cumulative basis relative to Comparator Funds and the Morningstar Benchmark Index. Like the Aggressive Fund, the Moderate Fund underperformed its category index, the Morningstar Moderately Aggressive Risk Index, every single year except 2018, which represents eight of nine years of underperformance relative to its Morningstar benchmark. Furthermore, the differences in annual performance are even more pronounced when viewed on a cumulative basis compounded over time.

**Table 2.b**

| Investment Name | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | Cumulative |
|---|---|---|---|---|---|---|---|
| Unified Trust Wealth Preservation Strategy - Moderate | 6.27% | 17.24% | -5.42% | 19.63% | 8.15% | 13.94% | 73.70% |
| Alerus Moderate Growth Institutional | 9.53% | 15.54% | -6.37% | 21.51% | 15.62% | 14.75% | 91.00% |
| +/- Unified Moderate | -3.26% | +1.70% | 0.95% | -1.88% | -7.47% | -0.81% | -17.30% |
| Associated Conservative Growth Life Stage | 7.59% | 19.00% | -4.93% | 22.84% | 21.27% | 14.51% | 107.65% |

COMPLAINT – CLASS ACTION - 21

| Investment Name | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | Cumulative |
|---|---|---|---|---|---|---|---|
| +/- Unified Moderate | -1.32% | -1.76% | -0.49% | -3.21% | -13.12% | -0.57% | -33.95% |
| State Street Aggressive Strategic Balanced Securities Lending Fund Class I | 9.85% | 19.29% | -7.33% | 23.93% | 15.25% | 17.16% | 103.22% |
| +/- Unified Moderate | -3.58% | -2.05% | +1.91% | -4.30% | -7.1% | -3.22% | -29.52% |
| Morningstar Mod Aggressive Target Risk Index | 10.21% | 18.89% | -6.74% | 22.95% | 13.51% | 14.04% | 94.49% |
| +/- Unified Moderate | -3.94% | -1.65% | +1.32% | -3.32% | -5.36% | -0.10% | -20.79% |

97.     When compared to the investment performance of its peer within the Allocation-70%-85% Equity Funds universe, the breadth of the Moderate Fund's underperformance exemplifies another complete failure of Milliman's fiduciary process. Based on Morningstar data, as of December 31, 2021, the Moderate Fund performed worse than 70% of peer funds over the preceding 5-year period, worse than 82% of peer funds over the preceding 3-year period, and worse than 77% of all peer funds over the preceding 1-year period. Given the Moderate Fund's poor 1-year and 3-year rankings, once Morningstar releases its ten-year rankings in 2022, it is highly likely the Fund will finish near or in the bottom quartile among its peers for the ten-year period.

98.     During the Class Period, the assets of the Moderate Fund averaged approximately $85 million. **Table 2.c** demonstrates the financial significance of this underperformance by showing the growth of $85 million invested in the Moderate Fund as compared to the growth of $85 million invested in each of the Comparator Funds from January 1, 2016, through December 31, 2021.

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**Table 2.c**

| Investment Name | Cumulative Return | Annualized Return | Ending Value |
|---|---|---|---|
| Unified Trust Wealth Preservation Strategy - Moderate I | 73.70% | 9.64% | $147.6 million |
| Alerus Moderate Growth Institutional | 91.00% | 11.39% | $162.3 million |
| Associated Conservative Growth Life Stage | 107.65% | 12.95% | $176.4 million |
| State Street Aggressive Strategic Balanced Securities Lending Fund Class I | 103.22% | 12.55% | $172.7 million |
| Morningstar Moderately Aggressive Target Risk Index | 94.49% | 11.73% | $165.3 million |

99.    Milliman's failure to remove the Moderate Fund has cost Plan participants approximately $28.8 million when compared to the performance of the best performing fund in the group.

### 3.    Conservative Fund

100.    Since its introduction to the Plan in 2013, the Conservative Fund's underperformance has also undermined the retirement savings of Plan participants. **Table 3.a** below illustrates three years of underperformance from January 1, 2013, through December 31, 2015, relative to benchmark indexes and the Comparator Funds.

**Table 3.a**

| Investment Name | Cumulative Return | Annualized Return |
|---|---|---|
| Unified Trust Wealth Preservation Strategy - Conservative | 17.62% | 5.56% |
| Alerus Conservative Growth Institutional | 21.69% | 6.76% |
| Associated Growth Balanced Life Stage | 27.04% | 8.30% |
| Benefit FCI Life Strategy Growth CL B | 25.21% | 7.78% |
| Morningstar Moderate Target Risk Index | 17.75% | 5.60% |

COMPLAINT – CLASS ACTION - 23

101.     Monitoring the Plan, any fiduciary would have used the Morningstar Moderate Target Index and Comparator Funds listed in **Table 3.a** as benchmarks for the performance of the Conservative Fund. At the end of the three-year period, the Milliman Defendants would have seen that its Conservative Fund had underperformed its benchmark slightly. More importantly however, compared to the best performing fund among the Comparator Funds, the underperformance was 9.29%. Despite this dreadful underperformance, the Milliman Defendants did not remove the Conservative Fund from the Plan. Predictably, the fund's underperformance continued throughout the Class Period.

102.     **Table 3.b** illustrates the underperformance of the Conservative Fund from January 1, 2016, through December 31, 2021, on an annualized and cumulative basis relative to Comparator Funds and the Morningstar Benchmark Index. As illustrated in **Table 3.b**, the Conservative Fund underperformed its benchmark every single year except 2018 and 2021, which represents seven of nine years of underperformance relative to its Morningstar benchmark. Furthermore, the differences in annual performance are even more pronounced when viewed on a cumulative basis compounded over time.

**Table 3.b**

| Investment Name | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | Cumulative |
|---|---|---|---|---|---|---|---|
| Unified Trust Wealth Preservation Strategy - Conservative | 6.69% | 12.94% | -4.10% | 18.39% | 8.99% | 10.72% | 65.10% |
| Alerus Conservative Growth Institutional | 8.14% | 13.31% | -4.06% | 19.09% | 14.30% | 11.87% | 79.00% |
| +/- Unified Conservative | -1.45% | -0.37% | +0.04% | -0.69% | -5.31% | -1.15% | -14.90% |
| Associated Growth Balanced Life Stage | 7.00% | 16.74% | -4.12% | 20.74% | 18.72% | 11.55% | 91.50% |

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

| Investment Name | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | Cumulative |
|---|---|---|---|---|---|---|---|
| +/- Unified Conservative | -0.31% | -3.80% | +0.02% | -2.35% | -9.73% | -0.83% | -26.40% |
| Benefit FCI Life Strategy Growth CL B | 7.68% | 16.51% | -5.90% | 20.87% | 15.87% | 15.31% | 90.66% |
| +/- Unified Conservative | -0.99% | -3.57% | +1.80% | -2.48% | -6.88% | -4.59% | -25.56% |
| Morningstar Moderate Target Risk Index | 8.57% | 14.66% | -4.76% | 19.03% | 12.82% | 10.19% | 75.44% |
| +/- Unified Conservative | -1.88% | -1.72% | +0.66% | -0.64% | -3.83% | +0.53% | -10.34% |

103.    When compared to the investment performance of its peers within the Allocation-50-70% Equity Fund universe, the breadth of the Conservative Fund's underperformance is yet another stunning if not a complete failure of Milliman's fiduciary process. Based on Morningstar data, as of December 31, 2021, the Conservative Fund performed worse than 79% of all peer funds over the preceding 5-year period, worse than 81% of all peer funds over the preceding 3-year period, and worse than 82% of all peer funds over the preceding 1-year period. Given the Conservative Fund's poor 1-year and 3-year rankings, once Morningstar releases its ten-year rankings in 2022, it is highly likely the Fund will finish near or in the bottom quartile among its peers for the ten-year period.

104.    During the Class Period, the assets of the Conservative Fund averaged approximately $40 million. **Table 3.c** demonstrates the financial significance of this underperformance by showing the growth of $40 million invested in the Conservative Fund as compared to the growth of $40 million invested in each of the Comparator Funds from January 1, 2016, through December 31, 2021.

Byrnes ♦ Keller ♦ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington  98104
(206) 622-2000

**Table 3.c**

| Investment Name | Cumulative Return | Annualized Return | Ending Value |
|---|---|---|---|
| Unified Trust Wealth Preservation Strategy - Conservative | 65.10% | 8.72% | $66 million |
| Alerus Conservative Growth Institutional | 79.00% | 10.19% | $71.5 million |
| Associated Growth Balanced Life Stage | 91.5% | 11.44% | $76.6 million |
| Benefit FCI Life Strategy Growth | 90.66% | 11.36% | $76.2 million |
| Morningstar Moderate Target Risk Index | 75.44% | 9.82% | $70.1 million |

105.    Milliman's failure to remove the Moderate Fund has costed Plan participants approximately $10.6 million when compared to the performance of the best performing fund in the group.

## V.    CLASS ACTION ALLEGATIONS

106.    29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. §1109(a).

107.    In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3), Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Specifically, Plaintiff seeks to certify, and to be appointed as representative of, the following class:

> All participants and beneficiaries of the Plan who invested in any of the Unified Funds from January 13, 2016, through the date of judgment, excluding the Milliman Defendants, any of their directors, and any officers or employees of the Milliman Defendants with responsibility for the Plan's investment or administrative function.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

108.   This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a.   The Class includes thousands of members and is so large that joinder of all its members is impracticable.

b.   There are numerous questions of law and fact common to this Class because the Milliman Defendants owed the same fiduciary duties to the Plan and to all participants and beneficiaries and took a common course of actions and omissions as alleged herein as to the Plan, and not as to any individual participant, that affected all Class members through their participation in the Plan in the same way. Thus, questions of law and fact common to the Class include, without limitation, the following: (i) whether each of the Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. §1109(a); (ii) whether the fiduciaries of the Plan breached their fiduciary duties to the Plan by employing an imprudent process for monitoring and evaluating Plan investment options; (iii) whether Plaintiff's claims of an imprudent process require similar inquiries and proof of the claims and therefore implicate the same set of concerns for all proposed members of the Class; (iv) what are the losses to the Plan resulting from each breach of fiduciary duty; and (v) what Plan-wide equitable and other relief the Court should impose in light of the Milliman Defendants' breach of duties.

c.   Plaintiff's claims are typical of the claims of the Class because Plaintiff was a participant during the Class Period and all participants in the Plan were harmed by the Milliman Defendants' misconduct.

d.   Plaintiff is an adequate representative of the Class because she participated in the Plan during the Class Period, has no interest that conflicts with the

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent attorneys to represent the Class.

e.     There are no substantial individualized questions of law or fact among Class members on the merits of this Action.

109.     Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Milliman Defendants in respect to the discharge of their fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a). Moreover, adjudications by individual participants and beneficiaries regarding the alleged breaches of fiduciary duties, and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

110.     Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because the Milliman Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Plaintiff seeks reformation of the Plan to make it a more viable retirement investment option, which will benefit her and other Plan participants.

111.     Additionally, or in the alternative, this action may be certified as a class under Rule 23(b)(3). A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and it is impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

112.    Additionally, or alternatively, this action may be certified as to particular issues under Rule 23(c)(4), including but not limited to the Milliman Defendants' liability to the Class for their allegedly imprudent conduct.

113.    Plaintiff's counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

## COUNT I

### Breach of Duties of Loyalty and Prudence by Mismanaging the Investment Options Selected for and Retained by the Plan During the Class Period
### (Violation of ERISA, 29 U.S.C. § 1104)

114.    The allegations set forth in the preceding paragraphs are realleged and incorporated herein by reference.

115.    At all relevant times during the Class Period, each of the Defendants acted as a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A), by exercising authority and control with respect to the management of the Plan and its assets and/or was designated in the Plan Document as a named fiduciary within the meaning of 29 U.S.C. § 1102(a).

116.    29 U.S.C. § 1104(a)(1) requires plan fiduciaries to act "solely in the interest" of plan participants and beneficiaries.

      a.    Subsection (A) of this section requires that the fiduciary act for the "exclusive purpose" of providing benefits to plan participants and defraying reasonable expenses of plan administration. 29 U.S.C. § 1104(a)(1)(A).

      b.    Subsection (B) adds the duty of prudence, requiring a plan fiduciary to act with the "care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

117.    ERISA's duty of prudence required the Defendants to give appropriate consideration to those facts and circumstances that, given the scope of their fiduciary investment

COMPLAINT – CLASS ACTION - 29

duties, they knew or should have known were relevant to the particular investments of the Plan and to act accordingly. *See* 29 C.F.R. §2550.404a-1. The Supreme Court has concluded that this duty is "a continuing duty to monitor [plan] investments and remove imprudent ones." *Tibble*, 575 U.S. at 529.

118.   As described above, the Defendants failed to properly evaluate the Plan's investments to ensure that each of these investments remained prudent and failed to remove the Unified Funds that were no longer prudent.

119.   During the Class Period, the Defendants had a conflict of interest when retaining the Unified Funds as investment options for the Plan. Acting in their self-interest, rather than the best interests of the Plan and its participants, the Defendants imprudently and disloyally retained investment options that performed poorly and that benefited Milliman affiliated entities, rather than Plan participants, despite the availability of superior – and readily available – investment alternatives as detailed herein. A prudent fiduciary, in possession of the same information, would have removed the Unified Funds as investment options in the Plan, replaced them with more prudent and better performing alternatives as well as used the size, leverage, and bargaining power of the Plan to secure access to superior investment alternatives for Plan participants.

120.   The Defendants breached their duties of prudence and loyalty with respect to the Plan by at least the following actions or omissions:

a.   failing to properly investigate the availability of, and give appropriate consideration to, funds with comparable or superior performance as alternatives to the Unified Funds;

b.   failing to evaluate and monitor on a regular basis the performance of the Unified Funds and the adverse impact of the long-term and significant underperformance of the Unified Funds on participants' retirement savings;

c.   failing to implement and employ an ongoing process to monitor the investment performance of the Unified Funds;

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

d.     considering and being motivated in whole or in part by Milliman Financial Risk Management LLC's continuing role as sub-adviser for the Unified Funds' $250 million in assets; and

e.     failing to promptly remove the imprudent Unified Funds.

121.    Through these actions and omissions, the Defendants failed to discharge their duties with respect to the Plan: (A) solely in the interest of the participants and beneficiaries of the Plan, and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A); and (B) failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §404(a)(1)(B), 29 U.S.C. §1104(a)(1)(B).

122.    As a direct and proximate result of these breaches of fiduciary duties, the Plan and each of its participants have suffered hundreds of millions of dollars of damages and lost-opportunity costs which continue to accrue and for which Defendants are jointly and severally liable pursuant to 29 U.S.C. § 1109. Pursuant to ERISA, 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a), Defendants are liable to make good to the Plan the losses resulting from the aforementioned breaches, to restore to the Plan any profits Defendants made through the use of Plan assets, to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count and are subject to other equitable or remedial relief as appropriate.

123.    Each of the Milliman Defendants is liable to make good to the Plan the losses resulting from the aforementioned breaches, to restore to the Plan any profits resulting from the breaches of fiduciary duties alleged in this Count and are subject to other equitable or remedial relief as appropriate.

124.    Each Milliman Defendant also participated in the breach of the other Milliman Defendants, knowing that such acts were a breach, and enabled the other Milliman Defendants to

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

commit a breach by failing to lawfully discharge its own fiduciary duties. Each Milliman Defendant knew of the breach by the other Milliman Defendants yet failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Milliman Defendant is liable for the losses caused by the breach of its co-fiduciary duties under 29 U.S.C. § 1105(a).

## COUNT II

### Failure to Monitor

### (Against All Milliman Defendants)

125. All allegations set forth in the Complaint are realleged and incorporated herein by reference.

126. The Defendants had a duty to monitor the performance of each individual to whom They delegated any fiduciary responsibilities. A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

127. To the extent any of the Defendant's fiduciary responsibilities were delegated to another fiduciary, the Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

128. The Defendants breached their fiduciary monitoring duties by, among other things:

    a.    failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of their appointees' imprudent actions and omissions with respect to the Plan;

    b.    failing to monitor their appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

c.      failing to ensure that the monitored fiduciaries had a prudent process in place for evaluating and ensuring that the Unified Funds were prudent; and

d.      failing to remove appointees whose performance was inadequate in that they continued to allow imprudent investment options to remain in the Plan to the detriment of Plan participants' retirement savings.

129.    Each fiduciary who delegated its fiduciary responsibilities likewise breached its fiduciary monitoring duty by, among other things:

a.      failing to monitor its appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as the Plan suffered enormous losses as a result of its appointees' imprudent actions and omissions with respect to the Plan;

b.      failing to monitor its appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breach because of the imprudent investment options in violation of ERISA;

c.      failing to implement a process to ensure that the appointees monitored the performance of Plan investments; and

d.      failing to remove appointees whose performance was inadequate in that they continued to allow imprudent investment options to remain in the Plan, all to the detriment of Plan participants' retirement savings.

130.    As a direct result of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had Milliman and the other delegating fiduciaries prudently discharged their fiduciary monitoring duties, the Plan would not have suffered these losses.

## PRAYER FOR RELIEF

For these reasons, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully requests that the Court:

Byrnes ♦ Keller ♦ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington  98104
(206) 622-2000

i)   find and adjudge that the Milliman Defendants have breached their fiduciary duties, as described above;

ii)   find and adjudge that the Milliman Defendants are personally liable to make good to the Plan $85 million in losses to the Plan resulting from their breaches of fiduciary duty, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty;

iii)   find and adjudge that the Milliman Defendants are liable to the Plan for appropriate equitable relief, including but not limited to restitution and disgorgement;

iv)   determine the method by which Plan losses under 29 U.S.C. § 1109(a) should be calculated;

v)   order the Milliman Defendants to provide all accountings necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C.§ 1109(a);

vi)   impose surcharge against the Milliman Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive, and/or in violation of ERISA;

vii)   reform the Plan to include only prudent investments;

viii)   certify the Class, appoint the Plaintiff as a class representative, and appoint Sanford Heisler Sharp, LLP as Class Counsel;

ix)   award to the Plaintiff and the Class their attorney's fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

x)   order the Milliman Defendants to pay interest to the extent allowed by law; and

xi)   grant such other equitable or remedial relief as the Court deems appropriate.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

DATED this 13th day of January, 2022.

BYRNES KELLER CROMWELL LLP

By /s/ Paul R. Taylor
    Paul R. Taylor, WSBA #14851
    1000 Second Avenue, 38th Floor
    Seattle, Washington 98104
    Telephone: (206) 622-2000
    Facsimile: (206) 622-2522
    ptaylor@byrneskeller.com

    Charles Field*
    Yusuf Parray*
    **SANFORD HEISLER SHARP, LLP**
    2550 Fifth Avenue, 11th Floor
    San Diego, CA 92103
    Telephone: (619) 577-4253
    Facsimile: (619) 577-4250
    cfield@sanfordheisler.com
    yparray@sanfordheisler.com

    Johan Conrod*
    Shaun Rosenthal*
    **SANFORD HEISLER SHARP, LLP**
    700 Pennsylvania Avenue SE, Suite 300
    Washington, DC 20003
    Telephone: (202) 499-5200
    Facsimile: (202) 499-5199
    jconrod@sanfordheisler.com
    srosenthal@sanfordheisler.com

    *pro hac vice forthcoming*
    *Attorneys for Plaintiffs and the Proposed Class*

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000