HONORABLE THOMAS S. ZILLY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| JOANNA P. MATTSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MILLIMAN, INC.; THE BOARD OF DIRECTORS OF MILLIMAN, INC.; THE MILLIMAN INVESTMENT COMMITTEE, and its members; THE MILLIMAN ADMINISTRATIVE COMMITTEE, and its members, Does 1-30,<br><br>Defendants. | NO. 2:22-cv-00037<br><br>**DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) AND SUPPORTING MEMORANDUM OF LAW**<br><br>**NOTED FOR HEARING:**<br>**December 2, 2022** |

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (2:22-CV-0037)

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

## I.     INTRODUCTION

Ms. Mattson's First Amended Complaint does not cure the deficiencies that the Court identified in dismissing the ERISA-based prudence claim asserted in her initial Complaint. The Court dismissed her initial challenge of the prudence of including the WPS Funds[1] in the Milliman, Inc. Profit Sharing and Retirement Plan ("Plan") because it found that she failed to allege "a meaningful benchmark" that provided "a sound basis for comparison" for the WPS Funds. Dkt. 43, Order on Defendants' Motion to Dismiss ("Order") at 3 (citations omitted). A "meaningful benchmark," the Court appropriately observed, is one that has "similar aims, risks, and potential rewards to the challenged fund." *Id.* (internal quotations and citations omitted). The Court concluded that, in order to allege a plausible prudence claim, Ms. Mattson must "allege sufficient information with respect to her proposed benchmarks to establish an 'apples-to-apples' comparison." *Id.  See also Wehner v. Genentech, Inc.*, No. 20-cv-06894, 2021 WL 507599, at *10 (N.D. Cal. Feb. 9, 2021) (allegations that comparator target date funds and indices shared the same overall purpose and strategy as the challenged fund was not enough to support an "'apples-to-apples' comparison").

In the First Amended Complaint, Ms. Mattson identifies three indices as potential benchmarks: (1) the same Morningstar Target Risk Indices included in her original Complaint—the Morningstar Aggressive, Moderately Aggressive, and Moderate Target Risk Indices (the "Morningstar Indices"); (2) three Dow Jones indices ("Dow Jones Indices"); and (3) the

---

[1] Ms. Mattson's lawsuit challenges the prudence of including as investment options the Unified Trust Wealth Preservation Strategy Target Growth Fund ("WPS Growth Fund"), the Unified Trust Wealth Preservation Strategy Target Moderate Fund ("WPS Moderate Fund"), and the Unified Trust Wealth Preservation Strategy Target Conservative Fund ("WPS Conservative Fund") (collectively, the "WPS Funds" or the "Funds"). *See* FAC ¶ 3.

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS (2:22-CV-0037) - 1

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

"custom" indices identified in the Fund Fact Sheets for the WPS Funds ("Custom Indices").[2] Dkt. No. 44, First Amended Complaint ("FAC") ¶¶ 66, 73-169.

In addition to the indices, for each WPS Fund, Ms. Mattson identifies only two target risk funds, out of the hundreds of target risk funds that Ms. Mattson admits are available in the marketplace. FAC ¶ 12. Specifically, Ms. Mattson identifies (1) for the WPS Conservative Fund, the Alerus Conservative Growth Institutional Fund and Benefit FCI Life Strategy Moderate Growth Fund; (2) for the WPS Moderate Fund, the Alerus Moderate Growth Institutional Fund and Mission Square Long-Term Growth Fund; and (3) for the WPS Growth Fund, the Alerus Aggressive Growth Institutional Fund and Transamerica Long Horizon CIT (collectively, the "Comparator Funds"). *Id.* ¶¶ 158-69; 128-39; 95-106.

Managed volatility funds like the WPS Funds are a distinct category of investments. Ms. Mattson's allegations fail to plausibly establish that the Morningstar Indices, the Dow Jones Indices and the Comparator Funds are meaningful benchmarks for the WPS Funds. None utilize a managed volatility strategy—a point that dooms her claims because the proposed comparators do not share investment "aims, risks, and potential rewards" similar to the WPS Funds. Moreover, the Morningstar Indices, the Dow Jones Indices and the Comparator Funds have higher allocations of assets in equity investments, which translate to material differences in their risk and reward profiles. As such, in comparing the WPS Funds to the two indices and Comparator Funds, Ms. Mattson failed to comply with the Court's Order to "establish an 'apples to apples comparison" that would render her prudence claim plausible. Order at 3.

---

[2] The Fund Fact Sheets are posted on a website that is maintained by Milliman, https://www.millimanbenefits.com, to which Plan participants with an account balance have access through their online account. The Court may consider the Fund Fact Sheets when deciding the Motion because they are incorporated by reference in or are central to the First Amended Complaint. *Khoja v Orexigen Therapeutics, Inc.*, 899 F. 3d 988, 998-99 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019). *See also Anderson v. Intel Corp. Inv. Policy Comm.*, No. 19-CV-4618, 2022 WL 74002, at *6-7 (N.D. Cal. Jan. 8, 2022) ("*Anderson II*") (taking judicial notice of fund fact sheets for challenged investments).

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS (2:22-CV-0037) - 2

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

Ms. Mattson's allegations regarding the Custom Indices identified in the WPS Fund Fact Sheets—her fifth proposed comparator—do not save the Complaint from dismissal. Earlier this year, the Supreme Court concluded that, in deciding a motion to dismiss, "courts must give due regard to the range of reasonable judgments [an ERISA plan] fiduciary may make based on her experience and expertise." *Hughes v. NW. Univ.*, 142 S. Ct. 737, 742 (2022). The Fund Fact Sheets to which Ms. Mattson cites in the First Amended Complaint confirm that the WPS Funds' performance exceeded the performance of the Custom Indices during the periods of high market volatility during the class period. Indeed, Ms. Mattson challenges the prudence of WPS Funds at the very moment that the WPS Funds are successfully reducing downside exposure and preserving capital for investors in an otherwise highly volatile market, just as they are designed to do. The First Amended Complaint simply does not allege a basis for concluding that the Plan's fiduciaries' decision to use the WPS Funds was outside "the range of reasonable judgments" an ERISA fiduciary could make. *Id.*

The Court also dismissed Ms. Mattson's monitoring claim in Count II of her initial complaint because she conceded that it was dependent on her prudence claim in Count I. *Id.* Because the First Amended Complaint fails to allege a plausible prudence claim in Count I, the monitoring claim in Count II should be dismissed again.

## II.     ARGUMENT

**A.     Ms. Mattson's Prudence Claim in Count I Should Be Dismissed.**

   **i.     The Morningstar Indices, the Dow Jones Indices and the Comparator Funds Are Not Meaningful Benchmarks Because They Do Not Employ a Managed Volatility Strategy.**

The WPS Funds are in a distinct category of investments that employ managed volatility strategies. As managed volatility funds, the WPS Funds purposefully seek to manage the extent to which the funds' value will fluctuate (up and down) in connection with market volatility. Volatility can be managed through a variety of investment approaches, such as changing the

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (2:22-CV-0037) - 3

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

allocation of the funds' underlying investments, using exchange-traded futures contracts (on major equity indices, U.S. Treasury bonds, and currencies), and implementing other strategies to "hedge" against market risk.[3]  In managing volatility, the funds may dampen returns during periods of market growth.  At the same time, managed volatility funds reduce downside exposure and preserve capital for investors, especially during periods of significant market declines.

Unlike other indices, neither the Morningstar Indices nor the Dow Jones Indices focus on managed volatility strategies.  Rather, they assess the performance of the broad category of hundreds of target risk funds, not the distinct category of investment employing managed volatility strategies.[4]  Ms. Mattson's allegations that the WPS Funds underperformed the two indices that track a different investment strategy—and, thus, do not share aims, risks, and potential rewards similar to the WPS Funds—do not plausibly establish that Defendants acted imprudently by including the WPS Funds for the Plan.  *See Wilcox v. Georgetown Univ.*, No. 18-422, 2019 WL 132281, at *11 (D.D.C. Jan. 8, 2019); *see also Reetz v. Lowe's Cos. Inc.*, No. 5:18-CV-00075-KDB-DCK, 2021 WL 4771535, at *53-58 (W.D.N.C. Oct. 21, 2021).

The same is true of each of the Comparator Funds alleged in the First Amended Complaint.  Ms. Mattson admits that the Comparator Funds "[do] not have a volatility target." FAC ¶¶ 95, 101, 128, 134, 158, 164.  Further, none of the Comparator Funds otherwise describe for investors that they employ a managed volatility strategy.[5]  This stands in stark contrast to

---

[3] In connection with the initial motion to dismiss, Ms. Mattson did not dispute that, in accordance their volatility management objectives, the WPS Funds used exchange-traded futures contracts and implemented other strategies to "hedge" market volatility.

[4] The facts sheets for the indices do not even mention volatility.  *See* Declaration of Michael J. Prame ("Prame Decl."), Ex. 1, Morningstar Target Risk Indexes Fact Sheet (June 2022); *see also* Ex. 2, Dow Jones Target Risk Indexes Fact Sheets (August 2022); Ex. 3, S&P/Dow Jones Target Risk Index Series Methodology.

[5] *See* Prame Decl., Ex. 4, Alerus Aggressive Growth Institutional Fund; Ex. 5, Transamerica Long Horizon CIT; Ex. 6, Alerus Moderate Growth Institutional Fund; Ex. 7, Mission Square

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS (2:22-CV-0037) - 4

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

the WPS Fund Fact Sheets that prominently identify and discuss in five separate places the volatility management inherent in the WPS Funds' investment strategy, as well as the level of volatility that each Fund targets. *See* Prame Decl. Ex. 10, WPS Conservative Fund Fact Sheets; Ex. 11, WPS Moderate Fund Fact Sheets; Ex. 12, WPS Growth Fund Fact Sheets. Like the Morningstar and Dow Jones Indices described above, the Comparator Funds are not meaningful benchmarks because they have aims, risks, and potential rewards that are different from the WPS Funds.

      **ii.**    **The Morningstar Indices, the Dow Jones Indices and Comparator Funds Are Not Meaningful Benchmarks Because They Have Materially Different Allocations to Equity Investments than the WPS Funds.**

The Morningstar Indices, the Dow Jones Indices and the Comparator Funds also are not meaningful benchmarks for purposes of assessing liability under ERISA because the indices have materially different allocation to equity investments, and, as such, do not share aims, risks and potential rewards similar to the WPS Funds. *See Reetz*, 2021 WL 4771535, at *55 ("It is unsurprising that equities, or funds with greater concentrations in equity, would generate greater returns when equities are performing exceptionally well.").

Ms. Mattson alleges that the Morningstar *Moderate* Target Risk Index and the Dow Jones U.S. *Moderate* Target Risk Index are comparators for the WPS *Conservative* Fund. The Morningstar index is based on an equity allocation of 50% to 70%. FAC ¶ 157. And, according to the First Amended Complaint, the Dow Jones Index "maintains an allocation of stocks, bonds, and short-term instruments in a portfolio equal to 60% of the risk associated with the U.S. equities." *Id.* ¶ 146. In contrast, the assets of the WPS Conservative Fund were invested ***less than 50%*** in equities during the six-year class period. Prame Decl. Ex. 10, Fund Equity Allocation Charts at 2.

---

Long-Term Growth Fund; Ex. 8, Alerus Conservative Growth Institutional Fund; Ex. 9, Benefit FCI Life Strategy Moderate Growth Fund.

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS (2:22-CV-0037) - 5

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

With respect to the WPS *Moderate* Fund, Ms. Mattson identifies the Morningstar *Moderately Aggressive* Target Risk Index and the Dow Jones U.S. *Moderately Aggressive* Target Risk Index as comparators. The Morningstar index is based on an equity allocation of 70% to 85%. FAC ¶ 124. According to the First Amended Complaint, the Dow Jones Index "maintains an allocation of stocks, bonds, and cash asset classes in a portfolio equal to 80% of the risk associated with the U.S. equities markets." FAC ¶ 115. In contrast, the assets of the WPS Moderate Fund were invested **less than 70%** in equities during the six-year class period. Prame Decl. Ex. 11, Fund Equity Allocation Charts at 2.

Finally, with respect to the WPS *Growth* Fund,[6] Ms. Mattson alleges that the Morningstar *Aggressive* Target Risk Index and the Dow Jones U.S. *Aggressive* Target Risk Index are comparators. The Morningstar index is based on an equity allocation of 85% or greater. FAC ¶ 91. And, according to the First Amended Complaint, the Dow Jones Index "may allocate up to 90% in equity securities." *Id*. ¶ 77. In contrast, the assets of the WPS Growth Fund were invested **less than 85%** in equities during the six-year class period.[7] Prame Decl. Ex. 12, Fund Equity Allocation Charts at 2.

The First Amended Complaint uses not only Comparator Indices with higher equity exposure than the WPS Funds, but also Comparator Funds with higher equity allocations. For

---

[6] In an effort to recast the investment goals of the WPS Growth Fund, Ms. Mattson incorrectly refers to the "Growth Fund" as the "Aggressive Fund" in the First Amended Complaint. FAC ¶ 3.

[7] Ms. Mattson alleges that the Dow Jones Target Risk Indices are "meaningful benchmarks" for the WPS Funds because they are identified in the participant fee disclosures. *See* FAC ¶¶ 66, 75, 112, 145. As noted in Defendants' Reply in Support of their First Motion to Dismiss, such an allegation, on its own, is insufficient to plead a "meaningful benchmark." *See* Dkt. 41 at 8 (citing *Wilcox*, 2019 WL 132281, at *11 (rejecting argument that a market index identified in the participant fee disclosures was an "appropriate benchmark" for purposes of evaluating the prudence of continuing to utilize the investment option, concluding that the argument "oversimplified[d] and misstate[d] the facts and governing law" because the index did not reflect the challenged fund's blend of assets)).

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS (2:22-CV-0037) - 6

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

example, the Alerus Conservative Growth Fund (60%) and Benefit FCI Life Strategy Moderate Growth Fund (50%) have materially higher equity exposure than the WPS Conservative Fund's 49.76% average during the class period.[8]  The Alerus Moderate Growth Fund (72%) and MissionSquare Growth Fund (77%) both have greater equity exposures than the WPS Moderate Fund's 69.8% average during the class period.[9] And, while the Alerus Aggressive Fund had a similar allocation to equities as the WPS Growth Fund, the Transamerica Long Horizon CTF identified by Ms. Mattson had an 88% equity allocation—higher than the WPS Growth Fund's 84.07% average.[10]

Even if the asset allocations for the Comparator Funds were similar to the WPS Funds, "[m]erely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty. . . . A side-by-side comparison of how two funds performed in a narrow window of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166-67 (6th Cir. 2022). As discussed above, Ms. Mattson inappropriately compares the performance of the WPS Funds to other investment options that do not use a managed volatility strategy and have different investment objectives.

For all of these reasons, the Morningstar Indices, the Dow Jones Indices and the Comparator Funds are not meaningful benchmarks.

### iii. Ms. Mattson's Allegations Regarding the WPS Funds' Performance Compared to the Custom Indices Do Not State a Claim.

Ms. Mattson attempts to plead imprudence based on the WPS Funds' performance compared to their respective Custom Indices. FAC ¶¶ 190, 197, 204. In doing so, Ms. Mattson

---

[8] FAC ¶¶ 161, 167; Prame Decl. Ex. 10 at 2.
[9] FAC ¶¶ 131, 137; Prame Decl. Ex. 11 at 2.
[10] FAC ¶¶ 98, 104; Prame Decl. Ex. 12 at 2.

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS (2:22-CV-0037) - 7

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

overlooks the primary investment strategy of the WPS Funds, which is to manage volatility. As discussed above, in managing volatility, the WPS may dampen returns during periods of aggressive market growth, like those that have largely existed since 2016. However, managed volatility funds like the WPS Funds are designed for investors who want to reduce downside exposure and preserve capital, especially during periods of significant market declines.

Ms. Mattson does not claim that the WPS Funds are not performing as designed. Nor can she. In connection with the steep market decline and volatility associated with the outbreak of COVID-19 that occurred in the first quarter of 2020, the WPS Funds, as shown in the chart below, significantly outperformed their custom benchmarks on a 3-month, 1-year, and 3-year basis. Moreover, on a 5-year basis (*i.e.*, from March 31, 2015 through March 31, 2020—which overlaps with almost the entire alleged class period), Unified determined that all three of the WPS Funds reported annualized returns that were better than or within 0.80 percent of their benchmarks over 5 years.

**WPS Funds' Performance as of 3/31/2020[11]**

|  | 3 month | Year to Date | 1 Year | 3 year | 5 Year |
|---|---|---|---|---|---|
| **WPS Conservative Fund** | -6.97% | -6.97% | 2.70% | 4.76% | 4.37% |
| **Conservative Index** | -10.06% | -10.06% | -1.30% | 3.85% | 4.18% |

|  | 3 month | Year to Date | 1 Year | 3 year | 5 Year |
|---|---|---|---|---|---|
| **WPS Moderate Fund** | -8.72% | -8.72% | 1.22% | 4.89% | 4.20% |
| **Moderate Index** | -15.15% | -15.15% | -5.70% | 3.18% | 4.31% |

---

[11] Prame Decl. Ex. 10, WPS Conservative Fund Fact Sheets at 35; Ex. 11, WPS Moderate Fund Fact Sheets at 35; Ex. 12, WPS Growth Fund Fact Sheets at 35. The highlighting indicates the time periods during which the WPS Funds outperformed the Custom Indices.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (2:22-CV-0037) - 8

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

|  | | | | | |
|---|---|---|---|---|---|
| **WPS Growth Fund** | -9.85% | -9.85% | -0.77% | 4.37% | 3.45% |
| **Growth Index** | -18.95% | -18.95% | -9.14% | 2.49% | 4.25% |

Following another period of significant market growth in 2020 and 2021, the markets turned dramatically downward again in 2022 and experienced high levels of negative volatility. Ms. Mattson's First Amended Complaint challenges the prudence of WPS Funds at the very moment that the WPS Funds are successfully reducing downside exposure and preserving capital for those Plan participants who sought to manage such volatility. As the investment returns for the WPS Funds establish, the WPS Funds are operating as they are designed to do in periods where there are high levels of negative volatility.

**WPS Funds' Performance as of 6/30/2022[12]**

|  | 3 month | Year to Date | 1 Year | 3 year | 5 Year |
|---|---|---|---|---|---|
| **WPS Conservative Fund** | -7.88% | -13.48% | -9.59% | 3.56% | 4.71% |
| **Conservative Index** | -9.94% | -14.31% | -10.57% | 4.39% | 5.48% |

|  | 3 month | Year to Date | 1 Year | 3 year | 5 Year |
|---|---|---|---|---|---|
| **WPS Moderate Fund** | -8.67% | -14.11% | -9.53% | 4.23% | 5.41% |
| **Moderate Index** | -12.17% | -16.27% | -11.26% | 6.21% | 7.08% |

---

[12] Prame Decl. Ex. 10, WPS Conservative Fund Fact Sheets at 55; Ex. 11, WPS Moderate Fund Fact Sheets at 55; Ex. 12, WPS Growth Fund Fact Sheets at 55. The highlighting indicates the time periods during which the WPS Funds outperformed their Custom Indices.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (2:22-CV-0037) - 9

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

| | | | | | |
|---|---|---|---|---|---|
| WPS Growth Fund | -8.83% | -13.79% | -8.74% | 4.20% | 5.31% |
| Growth Index | -13.80% | -17.74% | -12.02% | 7.36% | 8.09% |

The Supreme Court concluded earlier this year that "courts must give due regard to the range of reasonable judgments [an ERISA plan] fiduciary may make based on her experience and expertise." *Hughes*, 142 S. Ct. at 742. Adhering to the Supreme Court's directive, the Sixth Circuit ruled this summer in *Smith* that "[a] retirement plan acts wisely, not imprudently, when it offers distinct funds to deal with different objectives for different investors." *Smith*, 37 F.4th at 1167. That is exactly what has occurred here—the Plan offered a distinct category of investments for those Plan participants who wanted to manage market volatility and preserve capital. The WPS Funds are operating as designed to successfully achieve those investment objectives and Ms. Mattson's First Amended Complaint does not allege a basis for plausibly claiming that the Plan fiduciaries' decision to use the WPS Funds was outside the range of reasonable judgments a plan fiduciary could make.

**B.     The Duty to Monitor Claim in Count II Should Be Dismissed.**

Count II alleges that Defendants failed to monitor the Plan's fiduciaries they appointed or to whom fiduciary duties were delegated. *See* FAC ¶¶ 228-33. To state a claim for breach of ERISA's duty to monitor other plan fiduciaries, a plaintiff must "allege that the defendant failed to review the performance of its appointees at reasonable intervals in such a manner as may be reasonably expected to ensure compliance with the terms of the plan and statutory standards." *See Dorman v. Charles Schwab Corp.*, No. 17-cv-00285-CW, 2018 WL 6803738, at *7 (N.D. Cal. Sept. 20, 2018). Moreover, a failure to monitor claim is "derivative of the breach of fiduciary duty claim." *Id.* A failure to monitor claim should be dismissed if the plaintiff fails to plausibly allege an underlying breach of ERISA's duty of prudence or loyalty. Order at 3 (noting that Ms. Mattson "conceded that her 'monitoring' claim is premised on her

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (2:22-CV-0037) - 10

GORDON REES SCULLY MANSUKHANI, LLP
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

'prudence' claim"); *see also id.* (dismissing failure to monitor claim that was derivative of failed breach of fiduciary duty claim); *see also Anderson II*, 2022 WL 74002, at * 21 (same); *Kong v. Trader Joe's Co.*, No. CV 20-05790 PA, 2020 WL 7062395, at *7 (C.D. Cal. Nov. 30, 2020) (same) (*rev'd on other grounds*).  For the reasons discussed above in Section A, Ms. Mattson's prudence claim in Count I should be dismissed.  Accordingly, her derivative claim for breach of a duty to monitor in Count II necessarily fails and should also be dismissed.

### III. CONCLUSION

For the reasons stated above, Defendants respectfully request that the prudence and monitoring claims in Counts I and II of the First Amended Complaint be dismissed with prejudice.

**ATTORNEY FOR DEFENDANTS**

By *s/ Michael J. Prame*
    Michael J. Prame (admitted *pro hac vice*)
    Kara P. Wheatley (admitted *pro hac vice*)
    Rachael Hancock (admitted *pro hac vice*)
    GROOM LAW GROUP, CHARTERED
    1701 Pennsylvania Ave., NW, Suite 1200
    Washington, DC 20006
    Telephone: (202) 857-0620
    mprame@groom.com
    kwheatley@groom.com
    rhancock@groom.com

    Gordon & Rees Scully Mansukhani, LLP
    Sarah N. Turner, WSBA #37748
    701 Fifth Avenue Suite 2100
    Seattle, Washington 98104
    Telephone: (206) 695-5115
    sturner@grsm.com

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS (2:22-CV-0037) - 11

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2022, I electronically filed the foregoing document entitled with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following registered participants:

Paul R. Taylor, WBSA #14851
ptaylor@byrneskeller.com

Charles Field (admitted *pro hac vice*)
cfield@sanfordheisler.com

John Conrod (admitted *pro hac vice*)
Shaun Rosenthal (admitted *pro hac vice*)
jconrad@sanfrodheisler.com
srosenthal@sanfordheisler.com

*/s/ Michael J. Prame*
Michael J. Prame

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (2:22-CV-0037) - 12

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822