The Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOANNA P. MATTSON, on behalf of herself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>        v.<br><br>MILLIMAN, INC.; THE BOARD OF DIRECTORS OF MILLIMAN, INC.; THE MILLIMAN INVESTMENT COMMITTEE, and its members; THE MILLIMAN INC. U.S. RETIREMENT COMMITTEE, and its members, Does 1-30,<br><br>                                    Defendants. | NO. 2:22-cv-00037-TSZ<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS THE FIRST AMENDED COMPLAINT<br><br>NOTED FOR HEARING: DECEMBER 2, 2022 |

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ............................................................................................. 2

III.   STANDARD OF LAW.................................................................................... 3

IV.   ARGUMENT ................................................................................................... 4

   A.   THE COURT SHOULD REJECT DEFENDANTS' ATTEMPTS TO INTRODUCE FACTS AND INFERENCES IN THEIR FAVOR ....................................................................... 4

     1.   The Court Should Not Consider Defendants' Extrinsic Evidence at the Pleading Stage 4

     2.   It Is Improper to Give Weight to Defendants' Fallacious Narrative About "Managed Volatility Strategies" ................................................................. 6

   B.   DEFENDANTS CANNOT DEFEAT MATTSON'S ADEQUATELY PLED ALLEGATIONS THAT DEFENDANTS VIOLATED THEIR DUTY OF PRUDENCE ......................................... 8

     1.   Defendants Conceded the Custom Indices Are Meaningful Comparators and Plaintiff Sufficiently Alleged the Unified Funds Underperformed Them.................................. 8

     2.   Mattson Proffered the Dow Jones Indices as Comparators Because They Share Similar Aims, Risks, and Rewards........................................................... 11

     3.   The Morningstar Indices Are Meaningful Comparators............................................. 15

     4.   Mattson Proffered Individual Target Risk Funds with Similar Aims, Risks and Potential Rewards as the Unified Funds.......................................................... 16

   C.   PLAINTIFF'S DUTY TO MONITOR CLAIM SURVIVES DEFENDANTS' MOTION...................... 20

V.   CONCLUSION................................................................................................ 21

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - i

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## <u>TABLE OF AUTHORITIES</u>

### <small>CASES</small>

*Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133 (N.D. Cal. 2022) ........... passim

*Austin v. Union Bond & Tr. Co.*, No. 3:14-cv-706, 2015 WL 13681815 (D. Or. Apr. 24, 2015).. 6

*Baird v. BlackRock Instit. Tr. Co., N.A.*, 403 F. Supp. 3d 765 (N.D. Cal. 2019) ........................ 21

*Bazuaye v. INS*, 79 F.3d 118 (9th Cir. 1996) ................................................................ 9

*Becker v. Wells Fargo & Co.*, No. 20-2016, 2021WL 1909632 (D. Minn. May 12, 2021)9, 12, 13

*Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)* .......................................................... 3

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009)............................................... 6, 13

*Brown-Davis v. Walgreen Co.*, No. 1:19-CV-05392, 2020 WL 8921399 (N.D. Ill. Mar. 16, 2020) ............................................................................................................. 14, 19

*Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557 (9th Cir. Apr. 8, 2022) .......... 21

*Davis v. Washington Univ. in St. Louis*, 960 F.3d 478 (8th Cir. 2020) .................................. 8, 19

*Evans v. Associated Banc-Corp.*, No. 21-C-60, 2022 WL 4638092 (E.D. Wis. Sept. 30, 2022).. 5, 20

*Henderson v. Emory U.*, 252 F. Supp. 3d 1344 (N.D. Ga. 2017) .................................................. 11

*Hughes v. Northwestern*, 142 S. Ct. 737, 742 (2022) ................................................................. 10

*Karg v. Transamerica Corp.*, No. 18-CV-134, 2019 WL 3938471 (N.D. Iowa Aug. 20, 2019) .. 5, 7, 10

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)........................................ 4, 6

*Lauderdale v. NFP Ret., Inc.*, No. CV-21301, 2022 WL 422831 (C.D. Cal. Feb. 8, 2022)......... 10

*Lehman v. Nelson*, 862 F.3d 1203 (9th Cir. 2017)........................................................................ 11

*Matousek v. MidAmerican Energy Co.*, 51 F.4th 274 (8th Cir. 2022)........................................ 13

*Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018)..................................................... 8

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Nohara v. Prevea Clinic Inc.*, No. 20-C-1079, 2022 WL 3601567 (E.D. Wis. Aug. 23, 2022)... 10

*Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158 (9th Cir. 2022) ................................ 5

*Smith v. CommonSpirit Health*, 37 F.4th 1160, 1165 (6th Cir. 2022) .................................... 11, 20

*Snyder v. UnitedHealth Group, Inc.*, No. CV 21-1049, 2021 WL 5745852 (D. Minn. Dec. 2, 2021) ........................................................................................................ 8, 9, 12, 14

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) ............................................................ 3

*Vellali v. Yale Univ.*, 308 F. Supp. 3d 673 (D. Conn. 2018) ........................................................ 19

*Wehner v. Genentech, Inc.*, No. 20-CV-06894, 2021 WL 507599 (N.D. Cal. Feb. 9, 2021)....... 20

*Wilcox v. Georgetown Univ.*, No. CV 18-422, 2019 WL 132281 (D.D.C. Jan. 8, 2019)....... 14, 15

*Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902 (W.D. Mo. 2017) ........................... 10

## STATUTES

29 C.F.R. § 2550.404a-5(d)(1)(iii)................................................................................................. 11

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - iii

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

I.   **INTRODUCTION**

In 2013, Defendants selected a suite of three brand new investment funds (the Unified Funds)[1] to place in the Milliman, Inc. Profit Sharing and Retirement Plan (the "Plan"). At the time, the Unified Funds had no track record, the Plan was their sole or nearly sole investor, and—equally important—Defendants' investment adviser also served as the Unified Funds' sub-adviser. The Unified Funds in their first five years in the Plan significantly underperformed all meaningful benchmarks. But Defendants dogmatically plowed ahead with these underperformers, forcing participants to shop at the Milliman company store, ultimately relying on participants' money to provide between 97% and 100% of the Unified Funds' assets. Over the next five years, through July 31, 2022, the Plan's underperformance was so staggering that it cost Plan participants tens of millions of dollars in lost retirement savings.

Defendants now submit their Motion to Dismiss the First Amended Complaint Pursuant to Rule 12(b)(6) ("Motion") (Dkt. # 47), in which they labor to entirely rewrite the rules of ERISA pleading. To plead a proper case of imprudence, this Court issued guidance that Mattson must allege that the Unified Funds underperformed in comparison to a meaningful benchmark, i.e., one that has similar aims, risks, and potential rewards to the Unified Funds. Rich with facts, the First Amended Complaint ("FAC") far exceeds Mattson's burden, providing not just one meaningful benchmark, but five. These include benchmarks that the Plan itself used, benchmarks that Milliman presented in pitch materials to the public, benchmarks that leading investment fund service Morningstar, Inc. constructed, and specific target risk funds identified by Mattson—all of which have substantially similar aims, risks, and rewards to the Unified Funds. Defendants fail to show that any of these comparators are not meaningful benchmarks, nor could they.

---

[1] The Unified Funds are: the Unified Trust Wealth Preservation Strategy Target Growth Fund (the "Aggressive Fund"), Unified Trust Wealth Preservation Strategy Target Moderate Fund (the "Moderate Fund"), and Unified Trust Wealth Preservation Strategy Target Conservative Fund (the "Conservative Fund").

Defendants' second stab at dismissing Mattson's claims fails for four reasons. First, Defendants fully disregard that the pleading standard at this stage requires the Court to treat facts in the pleadings as true and make all inferences in Mattson's favor. Defendants, instead, draw on extrinsic data and ask the Court to make loosely drawn, favorable inferences as if they were law.

Second, unable to challenge a complaint that complies with and tracks the Court's guidance, Defendants distract by, once again, asserting that the Unified Funds are not target-risk funds. This argument ignores Defendants' own contrary representations to Plan participants and the public at large, the Court should again reject this argument, and decline to accept unsubstantiated factual assertions not alleged in the pleadings as true.

Third, Defendants quibble over miniscule variations between Mattson's well-pled comparators and the Unified Fund, citing no authority that differences as small as 0.24% in equity allocation would outright disqualify a benchmark, and asking the Court to make fact-bound determinations based on information outside of the pleadings.

Finally, Defendants concede, as they must, that Mattson has identified at least one meaningful comparator by relying on fund managers' own custom benchmarks, which alone fatally undercuts their Motion. Defendants' last-minute attempt to puff up the Unified Funds' recent short-term performance as compared to their own custom benchmarks to suggest Mattson failed to state a claim, aside from being incorrect under the law, is simply irrelevant. The Court should deny the Motion.

## II.    BACKGROUND

Mattson filed her class action Complaint in January 2022, alleging breach of fiduciary duties and failure to monitor. Compl. ¶¶ 114-30 (Dkt. # 1). Defendants moved to dismiss. *See* Defs.' Mot. to Dismiss Pl.'s Compl. Pursuant to Rules 12(b)(6) and 12(b)(1) ("Original Motion to Dismiss") (Dkt. # 34). The Court denied the motion as to Mattson's duty of loyalty claim and granted Mattson leave to expand on her prudence claim by detailing how alleged better-performing funds had similar "aims, risks, and potential rewards" to the Unified Funds. *See* Order on Defs.'

Mot. to Dismiss ("Order") at 3 (Dkt. # 43) (quoting *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1148 (N.D. Cal. 2022)). The Court also made "clear" that it "[wa]s not ruling that Mattson must offer either customized benchmarks or benchmarks described as 'managed volatility' as opposed to 'target risk' indices or funds," as Defendants had proclaimed, but instead, that she "must simply allege sufficient information with respect to her proposed benchmarks to establish an 'apples-to-apples' comparison and, thus, a 'plausible' lack-of-prudence claim." Order at 3 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

Delivering to the Court what it sought and more, Mattson's FAC identified the following comparators: (1) the Dow Jones Target Risk Indices that the Plan's fiduciaries chose as appropriate benchmarks in their own Fee Disclosure Notice to Plan participants ("Dow Jones Indices"); (2) the custom indices that Defendants identified in the funds' Fact Sheets ("Custom Indices"); (3) Target Risk Indices from Morningstar, the leading market analyst of investment funds ("Morningstar Indices"); and (4) two specific target risk funds for each of the three Unified Funds (collectively, the "Comparator Funds"). FAC ¶¶ 66, 73-169. With these, the FAC enumerated details, comparator by comparator, accounting for the similar and often identical "aims, risks, and potential rewards" to the Unified Funds. So, Mattson delivered not just an apples-to-apples comparison but an orchard's worth.

## III.   **STANDARD OF LAW**

A complaint challenged by a Rule 12(b)(6) motion to dismiss must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief. *Twombly*, 550 U.S. at 570.

1

## IV.   ARGUMENT

2

### A.   The Court Should Reject Defendants' Attempts to Introduce Facts and Inferences in Their Favor

3

4        As an initial matter, Defendants' Motion floods the Court with new facts not found in

5   Mattson's pleading and seemingly expects the Court to draw every inference in their favor.

6   Through both extrinsic documents filed along with their Motion and thereafter, and through factual

7   arguments set forth solely in Defendants' papers, Defendants urge the Court to consider a litany

8   of allegations not contained in the pleadings. Because the law forbids this, this Court must consider

9   only the allegations contained in Plaintiff's FAC, which indisputably state a claim for relief.

10              1.   The Court Should Not Consider Defendants' Extrinsic Evidence at the
                     Pleading Stage
11

12        "If defendants are permitted to present their own version of the facts at the pleading stage—

13   and district courts accept those facts as uncontroverted and true—it becomes near impossible for

14   even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief." *Khoja*

15   *v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556

16   U.S. 662, 678 (2009)). Although the Court may take judicial notice of facts in the public record in

17   a motion to dismiss, it may not "take judicial notice of disputed facts." *Id.* at 999. Similarly,

18   although a court may consider a document incorporated into a complaint if the plaintiff quoted

19   from it extensively, it is improper to assume the truth of facts asserted in that document "if such

20   assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1002-1003.

21        Defendants' Motion relies on a trove of extrinsic data not within the pleadings. Namely,

22   they attach a series of fact sheets for various funds and indices, *see* Mot. at 4 nn.4-5 & 7 nn.8-10,

23   and ask the Court to accept not only the contents of those fact sheets as part of the pleadings, but

24   also to accept the conclusions and inferences Defendants draw from those fact sheets. Mattson

25   neither cites extensively from these fact sheets nor relies on them for the basis of her claims, so

26   the Court should not automatically consider them as incorporated. *See, e.g.*, *Karg v. Transamerica*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 4

*Corp.*, No. 18-CV-134, 2019 WL 3938471, at *7 n.5 (N.D. Iowa Aug. 20, 2019) (denying defendants' attempt to incorporate extrinsic facts because "Plaintiffs inclusion of some Morningstar data in their complaint does not mean that the complaint 'necessarily embraced' any and all data on Morningstar's website related to any of the funds at issue" (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012))); *see also Evans v. Associated Banc-Corp.*, No. 21-C-60, 2022 WL 4638092, at *5 (E.D. Wis. Sept. 30, 2022) (declining to consider fact sheets not attached to the complaint).

There is no argument, however, that Defendants' October 26, 2022 filing of additional extrinsic fact sheets can be considered incorporated into the pleadings. Dkt. # 61. These most recent filings underscore Defendants' desperate efforts to misdirect the Court and focus on information outside the four corners of the complaint. Indeed, the fact sheets that Defendants submitted concern the third quarter of 2022—information that Defendants admit "became available after the date that the Motion was filed" but contend it should be included in consideration of the sufficiency of the FAC. *Id.* at 1:7-8. There is no doubt, of course, that the FAC was *also* created before such information "became available," and it is beyond dispute that the FAC did not rely upon such information in setting forth Mattson's allegations. The Court should therefore not entertain Defendants' attempt to expand the scope of the Court's mandate at this stage. Moreover, as discussed below, pointing to isolated performance data alone does not undercut Plaintiffs' claim that Defendants acted imprudently based on the cumulative underperformance of the Funds over a much longer period of time.

Even if the Court finds that some of the information in the extrinsic fact sheets is incorporated into Plaintiff's discussion of the funds in her FAC, Defendants make no argument as to why this extrinsic data should stand as the truth of the matter. Nor could they, as they have searched the public record for the few performance metrics favorable to their funds and now ask that the Court draw conclusions about what they meant. *See Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1165-66 (9th Cir. 2022) (stating that a court must neither draw inferences

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 5

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

against the plaintiff on a motion to dismiss nor "accept the truth of matters asserted in incorporated documents only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint" (quoting *Khoja*, 899 F.3d at 1014)).

The assumptions Defendants ask the Court to draw from review of the fact sheets require full discovery and expert analysis, which precludes the Court embracing them by using judicial notice on a motion to dismiss. *See Khoja*, 899 F.3d at 1000 (refusing judicial notice where the document "is subject to varying interpretations, and there is a reasonable dispute as to what [it] establishes" (quoting *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011))); *Austin v. Union Bond & Tr. Co.*, No. 3:14-cv-706, 2015 WL 13681815, at *2 (D. Or. Apr. 24, 2015) ("[T]he court may not consider matters contained in proffered documents that require interpretation and analysis or the offering of expert testimony."); *see also Anderson*, 579 F. Supp. 3d at 1144-46 (taking judicial notice of plan documents only "to the extent any facts" in those documents were not "subject to reasonable dispute," and declining to take judicial notice of disputed facts).

At this stage, Mattson's allegations must be treated as true, and the Court may not rely on Defendants' extrinsic evidence and unsubstantiated factual averments as a means to challenge Plaintiff's allegations. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009).

### 2.   It Is Improper to Give Weight to Defendants' Fallacious Narrative About "Managed Volatility Strategies"

In their Motion, Defendants repeat their scarecrow argument that the Unified Funds are not merely target risk funds but are "managed volatility" funds. Mot. at 3. The Court already rejected this argument. *See* Order at 3:6 ("[T]he Court is not ruling that Mattson must offer . . . benchmarks described as 'managed volatility' as opposed to 'target risk.'"). The Court should do so again. Nothing within the four corners of Plaintiff's amended pleading permit such unsubstantiated inferences to be drawn in favor of Defendants.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 6

Defendants cite no law and make extrinsic, unsupported factual statements to support their claim that "[m]anaged volatility funds like the [Unified] Funds are a distinct category of investments." Mot. at 2:11. Instead, Defendants ask the Court to take judicial notice of various pitch materials produced by them which reflect a volatility target for each Unified Fund. *Id*. at 3-4. From these materials, Defendants extrapolate that the Unified Funds somehow transformed from target risk funds (which is what the pitch materials label them as) to "managed volatility funds" which belong not in a target risk category but in a so-called "distinct category of investment employing managed volatility strategies." *Id.* at 4:10-11. They then ask the Court to draw a sweeping factual inference in their favor, namely that Plaintiff's comparators do not themselves manage portfolio volatility as part of an overall target risk strategy and therefore cannot share similar aims, risk, and potential rewards as those employing target risk strategies.[2] Indeed, Defendants could not point to any benchmark that focuses on so-called "managed volatility" strategies because no such distinct benchmark exists. Even the custom indices, which Defendants concede are meaningful benchmarks, do not use hedging strategies or exchange traded future contracts and are not "managed volatility" benchmarks. FAC ¶¶ 82, 121, 151.

Ultimately, in deciding a motion to dismiss, the Court may not draw inferences in Defendants' favor, particularly as to factual assertions not themselves present in the FAC. As the court stated in *Karg* when rejecting a similar effort by fiduciary defendants, "[e]ven if the Court takes judicial notice of defendants' [documents], . . . 'it may not rely on [defendants'] opinions about what proper inferences should be drawn from them.'" *Karg*, 2019 WL 3938471, at *6 (first alteration added).

---

[2] As the FAC explains, all target risk funds, including the benchmarks, manage components of risk including volatility. FAC ¶ 54.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 7

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**B.      Defendants Cannot Defeat Mattson's Adequately Pled Allegations that Defendants Violated Their Duty of Prudence**

To state a claim for breach of ERISA's duty of prudence, a plaintiff must allege that the fiduciaries retained investments that underperformed in comparison to "a meaningful benchmark"; *i.e.*, one that has similar aims, risk, and potential rewards to the funds being challenged. Order at 2:12-13 (quoting *Anderson*, 579 F. Supp. 3d at 1148); *see also Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018). Because "[p]lausibility depends on the 'totality of the specific allegations in [each] case,'" a court must look to the full range of benchmarks in the complaint—in isolation or in combination with each other—to determine whether plaintiffs have stated a claim of imprudence. *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020); *see also id.* (noting that in *Braden*, "a combination of a 'market index'" and another benchmark sufficed to make a meaningful comparison); *Snyder v. UnitedHealth Grp., Inc.*, No. CV 21-1049, 2021 WL 5745852, at *4 (D. Minn. Dec. 2, 2021) (holding Plaintiff had plausibly alleged imprudence when the "Complaint alleges underperformance of the [challenged funds] against six benchmarks in total").

As explained below, for each of the Unified Funds, Mattson has detailed the strategies (including asset allocation), risks, and potential upsides of meaningful comparators to substantiate her claim that Defendants violated their duty of prudence in managing the Plan. FAC ¶¶ 67-72, 107-11, 140-44.

1.      Defendants Conceded the Custom Indices Are Meaningful Comparators and Plaintiff Sufficiently Alleged the Unified Funds Underperformed Them

Defendants have conceded that the Custom Indices are meaningful comparators for the Unified Funds. *See* Original Mot. to Dismiss at 16:20-21 (Dkt. # 34) (affirmatively arguing that the Unified Funds' performance was assessed "relative to a ***custom*** benchmark that it specifically developed for each [Unified] Fund"); *see generally* Mot. (declining to raise an argument whether

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

the Custom Indices are meaningful benchmarks).[3] Despite Defendants' continued effort to push their "managed volatility" argument, it is telling that none of their Custom Indices focuses on volatility. Notably, Defendants fail to draw the Court's attention to this fact.

Plaintiff has alleged that the Unified Funds chronically underperformed their own fiduciaries' Custom Indices—and the dollar value lost was not insubstantial. From January 1, 2016 through July 31, 2022, the Conservative Fund's investment returns lagged by a cumulative 9.40%, the Moderate Fund's by 23.23%, and the Aggressive Fund's by 39.04%. FAC Tables. 1.c, 2.c, 3.c. In dollar terms, the underperformance cost Plan participants approximately $3.7 million, $19.7 million, and $29.2 million for the Conservative, Moderate, and Aggressive Funds, respectively. *Id.* These allegations are sufficient to plead Defendants breached their duty of prudence. *See Becker v. Wells Fargo & Co.*, No. 20-2016, 2021 WL 1909632, at *1 n.2, 5 (D. Minn. May 12, 2021) (denying motion to dismiss when three-year underperformance ranged from 1% to 3.3%); *Snyder*, 2021 WL 5745852, at *2, 4-5 (denying motion to dismiss when cumulative underperformance ranged from 5.23-21.23%). So, with Mattson's Custom Indices pleading alone, she has fully met the Court's order. *See* Order at 3:7-8 (requiring Mattson "simply allege sufficient information" to establish "a 'plausible' lack-of-prudence claim").

Unable to challenge the Custom Indices, Defendants seek to deflect from the damage by pointing to certain isolated moments when the Unified Funds outperformed these Indices. *See* Mot. at 8-10. Outperformance by the Unified Funds in one or two years alone does not preclude Plaintiff from arguing that Defendants acted imprudently in retaining the Unified Funds based upon their cumulative underperformance. The Court must consider the FAC as a whole, which plausibly alleges that the Unified Funds underperformed the benchmarks over the course of the entire Class Period. *Snyder*, 2021 WL 5745852, at *3 ("Outperformance by the Wells Fargo TDFs in one year alone does not preclude Snyder from arguing that Defendants acted imprudently in retaining the

---

[3] Defendants have waived the argument that the custom benchmarks are not meaningful, and, therefore, cannot raise it for the first time in their reply. *See Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

funds based upon their cumulative underperformance."). Simply put, "[w]hether good performance for one or more years during a period of otherwise poor performance is proof of prudent conduct is a factual issue that is not appropriate for the Court to resolve at this stage." *Karg*, 2019 WL 3938471, at *7; *see also Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902, 914 (W.D. Mo. 2017) (refusing to entertain defendant's argument about whether the plan's fees were excessive compared to those of meaningful comparators at the pleading stage because it "raise[s] factual issues that cannot be resolved in a motion to dismiss").

Defendants' citation to dicta from *Hughes v. Northwestern University*, 142 S. Ct. 737, 742 (2022), that courts must show "due regard to the range of reasonable judgments [a] fiduciary may make," does not save them. *See* Mot. at 10:5-6. *Hughes* rejected a bright-line rule that a menu of funds could defeat an imprudence claim premised on the performance of one of the funds, and in fact *Hughes* reaffirmed a previous holding that when fiduciaries "fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Hughes*, 142 S. Ct. at 742 (citing *Tibble v Edison Int'l*, 575 U.S. 523, 529-30 (2015)). "Due regard" is not a get-out-of-jail-free card, and "the range of reasonable judgments" does not include disastrous and protracted underperformance such as the performance detailed in Mattson's FAC. *See, e.g.*, FAC ¶¶ 179-90, 195-98, 201-204, 208. For that reason, courts have not adopted this misleading line in ruling on a motion to dismiss. *See, e.g.*, *Lauderdale v. NFP Ret., Inc.*, No. CV-21301, 2022 WL 422831, at *8 (C.D. Cal. Feb. 8, 2022) (noting the court would consider the "range of reasonable judgments a fiduciary may make" after "both parties have had the opportunity to present all of their evidence"); *Nohara v. Prevea Clinic Inc.*, No. 20-C-1079, 2022 WL 3601567, at *4 (E.D. Wis. Aug. 23, 2022). Courts have found pleading sufficient to defeat motions to dismiss where a plaintiff alleged underperformance relative to a range of comparators and over long periods of

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 10

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

time. *See, e.g.*, *Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1351-52 (N.D. Ga. 2017), which is exactly what Mattson has done here.[4]

Moreover, the Court should not accept Defendants' inference—found nowhere on the face of the pleadings—that the purpose of the Unified Funds was to significantly underperform in periods of market growth but outperform where markets are falling precipitously. Using isolated stock market movements to support their untenable position, Defendants improperly ask the Court to infer facts in its favor to conclude the United Funds were prudent. Mot. at 7-10. Because Mattson has alleged that throughout the Class Period Unified Funds significantly underperformed the Custom Indices, which share similar aims, risks, and rewards with the challenged funds, she has stated a claim that Defendants breached their fiduciary duties.

2.   Mattson Proffered the Dow Jones Indices as Comparators Because They Share Similar Aims, Risks, and Rewards

ERISA's purpose is "to protect plan participants and beneficiaries." *Lehman v. Nelson*, 862 F.3d 1203, 1217 (9th Cir. 2017) (quoting *Boggs v. Boggs*, 520 U.S. 833, 845 (1997)). To that end, the Department of Labor issued a regulation in 2011 requiring Defendants to identify "the name and returns of an appropriate broad-based securities market index" so the Plan participants can compare the returns of the Unified Funds to an appropriate comparator. *See* 29 C.F.R. § 2550.404a-5(d)(1)(iii).

In their own required fee disclosures, Defendants designated the Dow Jones Indices as relevant comparators to evaluate the Unified Funds' performance.[5] Courts have widely held that

---

[4] Similarly, Defendants' reliance on *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1165 (6th Cir. 2022) is misplaced because the Sixth Circuit merely held the plan had discretion to offer actively managed funds. In fact, the court reaffirmed that "the company still could violate ERISA by imprudently offering *specific* actively managed funds" and "the plan must ensure that all fund options remain prudent options," *id.* at 1165-66, which is exactly what Mattson has done by showing these specific Unified Funds have underperformed their benchmarks.

[5] The 2021 Milliman Profit Sharing & Retirement Plan's Fee Disclosure Notice lists the Dow Jones Moderate Target Risk Portfolio Index as the benchmark for the Conservative Fund and lists the Dow Jones Aggressive Target Risk Portfolio Index as the benchmark for the Moderate and

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 11

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

designated benchmarks in a required disclosure "are plausibly meaningful benchmarks against which to compare funds." *Anderson*, 579 F. Supp. 3d at 1151 (citing *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1076 (N.D. Cal. 2017)); *see also Becker*, 2021 WL 1909632, at *5 ("Indeed, by using the very benchmarks that Defendants themselves selected for comparison, Becker makes considerably 'more than a bare allegation that cheaper investments exist in the marketplace.'" (quoting *Meiners*, 898 F.3d at 822)); *Snyder*, WL 5745852, at *4 ("[T]he fact that Defendants used the Indices as benchmarks themselves strongly supports an inference that they are meaningful.").

Moreover, Mattson specifically alleges the aims, risks, and rewards of the Dow Jones Indices are comparable with those of the Unified Funds. Like the Unified Funds, the aims of the Dow Jones Indices are similar in that they both target a given risk tolerance, primarily measured by the relative allocation of equities to fixed-income investments. Mattson alleged that the Unified Funds and the Dow Jones Indices had similar asset allocations to large-, mid-, and small-cap stocks, and bonds, and thus similar aims, risks, and potential rewards. FAC ¶¶ 73-79. The differences in equity allocations between the Unified Funds and their corresponding Dow Jones Index ranged between 3% and 10%, an immaterial amount that does not undermine the overarching similarities. *Id.* ¶¶ 71, 77, 110, 115, 143, 146.

Mattson also alleged that each Unified Fund substantially underperformed in comparison to the Dow Jones Indices. *See* FAC ¶¶ 179-90, 195-98, 201-204, 208. Tables 1.a, 2.a, 3.a of the FAC demonstrate that every single Unified Fund performed worse than its corresponding Dow Jones Index benchmark over the 3-year interval prior to the Class Period (from January 1, 2013 through December 31, 2015). Further, Tables 1.c, 2.c, 3.c demonstrate that throughout the Class Period, every single Unified Fund performed worse than its corresponding Dow Jones Index over a 6+ year interval (from January 1, 2016 through July 31, 2022). By alleging that the Unified Funds

---

Aggressive Funds. Although Defendants are bound to this representation of an appropriate benchmark, out of an abundance of caution and in accordance with the Court's Order, the FAC also identified the Dow Jones Moderately Aggressive Target Risk Index as a possible comparator for the Moderate Fund. *See* FAC ¶¶ 112-18.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

substantially underperformed in comparison to the Plan's own benchmarks, Plaintiff states a plausible claim for breach of ERISA's duty of prudence. And as benchmarks used by the Plan and that Defendants disclosed to Plan participants, there can be no doubt that these benchmarks and their underperformance is "meaningful." *Becker*, 2021 WL 1909632, at *5 (holding that Defendant-selected benchmarks are "sufficiently meaningful to provide proper comparison to the challenged funds").

Defendants' efforts to run away from their own benchmark are of no consequence. Defendants make much ado about the Dow Jones Target Risk Indices not focusing on managed volatility strategies. Mot. at 5. As explained above, the concept of "managed volatility" as a distinct "category" of investments is a factual fallacy drawn solely from Defendants' papers—not from the pleadings they seek to dismiss, and Defendants' argument is therefore of no moment.

To the extent Defendants claim the Dow Jones Target Risk Indices are a compilation of a broad category of hundreds of target risk funds, Mot. at 4, Defendants suffer from a case of mistaken identity. The Dow Jones Target Risk Indices are pre-set investment portfolios whose performance the Unified Funds hope to meet or exceed, which is different than a target risk peer universe, which calculates the composite performance of hundreds of target risk funds, including the Unified Funds. The two should not be confused. Courts have recognized indices as meaningful benchmarks, while rejecting peer universes as meaningful benchmarks. *Compare, e.g.*, *Braden*, 588 F.3d at 595-96 (finding market index and other shares of the same fund was meaningful because the challenged funds "underperformed the market indices they were designated to track") *and Becker*, 2021 WL 1909632, at *4-5, *with Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022) (finding complaint contained little information about each challenged fund and "even less about the funds in each peer group"); *Anderson*, 579 F. Supp. 3d at 1151 (stating "'peer group categories' are inappropriate benchmarks . . . because the Morningstar 'peer group categories' are an average of a large group of funds").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 13

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Defendants also quibble about the Dow Jones Target Risk Indices allocating between 3% and 10% more to equity securities than the Unified Funds allocated. Mot. at 5-6. But when Defendants selected the Dow Jones Target Risk Indices as the appropriate benchmarks, they did not believe a 3%-10% difference in equity allocations was sufficiently material. Otherwise, as fiduciaries, their selection of the Dow Jones Target Risk Indices would have been a breach of their fiduciary duties; they would have selected more appropriate benchmarks. But they did not because the Dow Jones Target Risk Indices are meaningful benchmarks. To the extent that Defendants now dispute the materiality of 3%-10% differences in equity allocation between the Unified Funds and the Dow Jones Target Risk Indices, they have cited no legal or investment authority to support this bold assertion—nor could they. It would be improper for the Court to make that determination without looking outside the pleadings and without drawing improper factual inferences in Defendants' favor. *Snyder*, 2021 WL 5745852, at *4; *Brown-Davis v. Walgreen Co.*, No. 1:19-CV-05392, 2020 WL 8921399, at *2 (N.D. Ill. Mar. 16, 2020) (denying motion to dismiss when "facts are disputed with regard to the similarities between the Funds and Comparator Funds and benchmark indexes[, because a]t this stage, the Court must construe all of Plaintiffs' factual allegations as true, and must draw all reasonable inferences in Plaintiffs' favor").

Defendants cite *Wilcox v. Georgetown University*, No. CV 18-422, 2019 WL 132281, at *11 (D.D.C. Jan. 8, 2019), for the proposition that a benchmark identified in a participant fee disclosure is not automatically a meaningful benchmark. In the *Wilcox* pleadings, the plaintiffs were confused about the type of fund at issue as well as the benchmark disclosed in the fund's prospectus. There, plaintiffs relied solely on the Russell 3000 index, a U.S. stock only benchmark, even though the fund had a blended U.S./international portfolio; and the prospectus disclosed a composite benchmark that combined the weighting of the Russell 3000 for the U.S. component with another index, the MSCI All Country World ex USA Investable Market Index ("MSCI ACWI ex USA IMI") for the international component. *Id.* at *4. The court specifically questioned the Russell 3000 as an appropriate benchmark for the challenged blended portfolio, and plaintiffs in

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 14

Byrnes ♦ Keller ♦ Cromwell llp
38th Floor
1000 Second Avenue
Seattle, Washington  98104
(206) 622-2000

that case made no effort to explain to the court why the Russell 3000 was a meaningful benchmark when they knew the prospectus disclosed it was inappropriate. *Id.* at *4, 11.

By contrast, in direct response to this Court's question as to whether the Aggressive Dow Jones Index was an appropriate comparator to Moderate Fund, *see* Order at 3 n.2, Mattson added the Moderately Aggressive Dow Jones Index as a more meaningful benchmark for the Moderate Fund, and included sufficient facts to show why the Dow Jones Moderate Index is a meaningful comparator. FAC ¶¶ 113-17. And, because Defendants' materials do not indicate any sound basis for finding the Dow Jones Target Risk Indices are unsuitable, *Wilcox* is an apples-to-oranges comparison.

### 3.   The Morningstar Indices Are Meaningful Comparators

Morningstar is the leading provider of independent investment research products (e.g., data and research insights on managed investment products, publicly listed companies, and private capital markets) relied upon by individual investors, financial advisors, asset managers, retirement plan providers and sponsors, and institutional investors in the private capital markets in North America, Europe, Australia, and Asia. FAC ¶ 84 & n.3. Mattson adequately alleged that the Morgningstar Indices are meaningful comparators by first describing the fact-intensive investigation Morningstar performs when assigning a publicly traded fund to a comparator category. FAC ¶¶ 84-90. While a fuller description of the Morningstar investigation is detailed in paragraphs 84-91 of the FAC, in short, Morningstar uses a proprietary classification methodology that compares funds based on their underlying portfolio holdings and reviews the fund's strategy. FAC ¶¶ 87, 89. Morningstar classifies funds with similar risk factors and holdings dating back at least three years into a Morningstar "category." FAC ¶ 87. For each "category," Morningstar created a benchmark index (as opposed to a peer universe) to allow any given fund within that category to track its investment performance. *Id.* ¶ 90. Thus, Morningstar's classification methodology accounts for similar aims, risks, and potential rewards inherent in the Unified Funds.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 15

BYRNES ◆ KELLER ◆ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

Moreover, Mattson alleged in detail the ways in which the Unified Funds share comparable aims, risks, and rewards as their Morningstar Indices. For instance, the Morningstar Aggressive Target Risk Index was created to represent funds which "seek to provide both income and capital appreciation by investing in multiple asset classes, including stocks, bonds, and cash," which is also an accurate description of the Aggressive Fund's aims. FAC ¶ 91. To achieve those aims, both the Aggressive Fund and the Morningstar Aggressive Target Risk Index invest over 85% of their portfolios to equity securities, which is allocated among large-, mid- and small-cap funds, and international funds. *Id.* ¶¶ 71, 91, 93. Both also invest in bonds. *Id.* Thus, the Aggressive Fund shares similar aims, risks, and rewards as the Morningstar Aggressive Target Risk Index. Paragraphs 123-27 and 153-57 of the FAC explain why the Unified Funds share similar aims, risks, and rewards as the other Morningstar Indices.

Mattson has also alleged that each Unified Fund underperformed its corresponding Morningstar Index. *See* FAC ¶¶ 179-90, 195-98, 201-204, 208. The Morningstar Aggressive Target Risk Index outperformed the Aggressive Fund by more than 27% cumulatively over the class period, the Moderate Fund by more than 14%, and the Conservative Fund by more than 7%. *See id.* Tables 1.b, 2.b, 3.b.

    4. <u>Mattson Proffered Individual Target Risk Funds with Similar Aims, Risks and Potential Rewards as the Unified Funds</u>

As Mattson alleges, target risk funds have the primary investment aim of achieving the highest total return consistent with the investor's level of risk tolerance (*i.e.*, moderate, moderately aggressive, or aggressive), which includes managing the funds' volatility. FAC ¶ 41. Mattson added to her exhaustive suite of comparators two specific target risk funds[6] for each of the

---

[6] Mattson pled the following individual funds: (1) For the Aggressive Fund, she pled: (a) the Alerus Aggressive Growth Institutional Fund and (b) the Transamerica Long Horizon—CTF; (2) for the Moderate Fund, she pled: (a) the Alerus Moderate Growth Institutional Fund and (b) the Mission Square MP Long-Term Growth R3; and (3) for the Conservative Fund, she pled: (a) the Benefit FCI Life Strategy Moderate Growth Fund and (b) Alerus Conservative Growth Institutional Fund. FAC ¶¶ 95-106; 128-39; 158-69.

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

individual Unified Funds that not only have "similar aims, risks, and potential rewards" to the Unified Funds but, in many instances, are materially the same. *Anderson*, 579 F. Supp. 3d at 1148; *see* FAC ¶¶ 41-62, 95-106, 128-139, 158-169. To support allegations that these comparators were meaningful benchmarks, Plaintiff evaluated each fund's portfolio for target risk tolerance, equity allocation, and fixed income allocations. as well as for historical volatility. *Id.*

Plaintiff alleges the Aggressive Fund and its two comparator funds, the Alerus Aggressive Growth Institutional Fund ("Alerus Aggressive Fund") and the Transamerica Long Horizon CTF (the "Transamerica Fund"), are target risk funds that aggressively allocate across equity asset classes that include large-cap, mid-cap and small-cap, and international funds. The Aggressive Fund had an 87% equity allocation and 12% volatility target. *Id*. ¶¶ 67-71. Similarly, the Alerus Aggressive Fund had an 84% equity allocation and a historical volatility of 12.48% *Id.* ¶¶ 95-100. The Transamerica Fund had an 88% equity allocation and a historical volatility of 13.47%. *Id.* ¶¶ 101-106. Like the Aggressive Fund, both funds face similar risks inherent in "its aggressive allocation to equity securities." *Id.* ¶¶ 98, 104. These risks include "market risk, allocation risk, fund of funds risk, and large-cap, small-cap and mid-cap stocks, international assets, and fixed income security risks." *Id.* ¶¶ 99, 105.

Plaintiff alleges the Moderate Fund and its two comparator funds, the Alerus Moderate Growth Institutional Fund (the "Alerus Moderate Fund") and the Mission Square MO Long-Term Growth R3 Fund (the "Mission Square Fund") are all target risk funds that allocate less aggressively across equity asset classes that include large-cap, mid-cap, and small-cap, and international funds. The Moderate Fund had a 70% equity allocation and a 10% volatility target. *Id*. ¶¶ 107-110. The Alerus Moderate Fund had a 72% equity allocation and a historical volatility of 10.25%. *Id.* ¶¶ 128-32. The Mission Square MO Long-Term Growth R3 Fund had a 77% equity allocation and a historical volatility of 11.27%. *Id.* ¶¶ 134-39. Paragraphs 128 to 139 of the FAC further explain that the Moderate Fund and its two comparator funds have similar aims, risks, and

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 17

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

rewards, including sharing "market risk, allocation risk, fund of funds risk, and large-cap, small-cap, mid-cap, international, and fixed income risks."

Plaintiff alleges that the Conservative Fund and its two comparator funds, the Benefit FCI Life Strategy Moderate Growth Fund ("Benefit FCI Fund") and the Alerus Conservative Fund are target risk funds that diversify across asset classes that include large-cap, mid-cap and small-cap, international and fixed income funds. The Fund had a 50% equity allocation and 8% volatility target. *Id.* ¶¶ 140-43. The Benefit FCI Fund had a 49% equity allocation and a historical volatility of 7.85%. *Id.* ¶¶ 158-61. The Alerus Conservative Fund had a 60% equity allocation and a historical volatility of 8.5%. *Id.* ¶¶ 164-67. Paragraphs 158 to 169 of the FAC further explain that the Conservative Fund and its two comparator funds have similar aims, risks, and rewards, including sharing "market risk, fixed income risk, allocation risk, the risk associated with investing in large-, small-, mid-cap stocks and international stocks."

Plaintiff further alleges the Unified Funds demonstrated sustained underperformance in comparison to the Comparator Funds. Tables 1.a, 2.a, 3.a of the FAC demonstrate that at the start of the Class Period, every single Unified fund had performed worse than the two Comparator Funds over the prior 3-year interval (from January 1, 2013 through December 31, 2015). Further, Tables 1.c, 2.c, 3.c demonstrate that over the course of the Class Period, every single Unified Fund performed worse than the Comparator Funds over a cumulative 6+ year interval (from January 1, 2016 through July 31, 2022).

Defendants' efforts to differentiate the investment strategies of the Unified Funds from those of the Comparator Funds focus on the trivial. For example, Defendants contend that the Benefit FCI Life cannot be a meaningful comparator because its 50% allocation to equities represents "a materially higher equity exposure" than the Conservative Fund's 49.76% equity allocation. Mot. at 7. Similarly, Defendants contend that the Alerus Moderate Growth Fund's 72% equity allocation renders the fund an inapt comparator to the Moderate Fund with its 69.8% equity allocation. *Id*. Defendants concede that the Alerus Aggressive Fund had a similar allocation to

equities as the Aggressive Fund yet attack Transamerica Fund because it had an 88% equity allocation compared to the Aggressive Fund's 87% allocation alleged by Plaintiff (Defendants assert the average is 84%). *Id.*

Defendants' protestations not only require the Court to impermissibly draw factual inferences in their favor, but also plot a decidedly wayward course. Defendants' self-serving and unsupported suggestion that a fund's recognition as a meaningful benchmark requires an identical (as opposed to a similar) mix of investments goes against the pleading instructions set out by the Court and against case law. Even if the similarities for some waned in brief periods, looking at each of the Comparator Funds over the entire Class Period, the similarities are clear. *See Davis*, 960 F.3d at 484 ("Plausibility depends on the 'totality of the specific allegations . . . .'" ). Under Defendants' narrative, a meaningful comparator would necessitate identical investment portfolios and identical investment performance at all times; therefore no fund would provide a meaningful comparator for another. FAC ¶¶ 51-52. If that were the law, it would effectively render ERISA unenforceable. [7]

To the extent any "facts are disputed with regard to the similarities between the Funds and Comparator Funds," "the Court must construe all of Plaintiffs' factual allegations as true, and must draw all reasonable inferences in Plaintiffs' favor." *Brown-Davis*, 2020 WL 8921399, at *2; *see also Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 684 (D. Conn. 2018) ("The defendants challenge

---

[7] Although the courts in *Davis* and *Anderson* found that plaintiffs in those cases did not state a claim of imprudence, Mattson's array of benchmarks are far closer to the challenged funds—and her FAC, by contrast, thoroughly alleges those similarities. In *Davis*, the Eighth Circuit found that certain benchmarks were not meaningful comparators because they were different in kind: for instance, passively-managed index funds could not serve as a meaningful benchmark for actively-managed funds with a variable annuity component. 960 F.3d at 485. And in *Anderson* Northern District of California also found that plaintiffs merely made threadbare generalizations about "common" practice in using certain comparators, and only generally appealed to Morningstar's authority. 579 F. Supp. 3d at 1150. Here, by contrast, Plaintiff proffers specific allegations detailing shared aims, risks, and rewards between an array of benchmarks and the Unified Funds, including by concretely pleading "factual allegations regarding the characteristics" of particular funds. *Id.* at 1152. The FAC is replete with specific detail as to similar risk profiles, equity allocation, and above all, the funds' own stated benchmarks.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 19

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

the plaintiffs' benchmarks for measuring the investments' performances, but this amounts to challenging a fact that the court must accept as true at the motion to dismiss stage.").

Defendants' reliance on *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022) is equally misplaced. The Sixth Circuit in *Smith* merely reaffirmed that it is important to consider the investment objectives and risks of the comparator fund prior to comparing the performance of the funds, and that the challenged active fund had a different objective than the comparator passively managed fund. *Id.* at 1167. In contrast to the plaintiff in *Smith*, Mattson offered detailed factual allegations demonstrating that each Unified Fund had a similar objective, volatility, asset allocations, risks, and rewards as each Comparator Fund, making them apples-to-apples comparators for evaluating their respective performances.

The other cases on which Defendants rely in their supplemental authorities (Dkt. # 59) are also distinguishable. In *Wehner v. Genentech, Inc.*, No. 20-CV-06894, 2021 WL 507599 (N.D. Cal. Feb. 9, 2021) the court dismissed plaintiff's prudence claim because it relied on comparing actively managed and passively managed funds and because the complaint failed to adequately allege facts to support that comparison. *See id.* at *10. Mattson's comparison does not rely on equating active and passive funds, and she has thoroughly pled the aims, risks, and rewards of a wide range of comparable benchmarks.

In *Evans v. Associated Banc-Corp*, the court found the pleadings insufficient where the plaintiff chose individual funds as comparators for one of defendant's funds solely because they came from the same Morningstar "50% to 70% Equity category" as the challenged fund without identifying the comparable portfolio holdings, aims, risks and potential rewards. 2022 WL 4638092, at *7. Here, for the Comparator Funds, Mattson alleged facts that showed similar allocations to equity and fixed income funds, in addition to other data. *See, e.g.*, FAC ¶¶ 158-69.

### C.   Plaintiff's Duty to Monitor Claim Survives Defendants' Motion

Defendants make no additional arguments to challenge Mattson's duty to monitor claim; instead, they argue that it fails because it is derivative of the duty of prudence claim. Mot. at 10-

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 20

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

11; *Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *2 (9th Cir. Apr. 8, 2022) (unpublished); *Baird v. BlackRock Instit. Tr. Co., N.A.*, 403 F. Supp. 3d 765, 784 (N.D. Cal. 2019). Because Mattson has more than adequately pleaded the duty of prudence claim as explained above, this derivative claim similarly survives Defendants' Motion.

## V.    CONCLUSION

Defendants cannot establish grounds to dismiss Mattson's FAC by relying on the well-pled facts or the law. Instead, they ask the Court to apply a fictitious pleading standard and, in so doing, rewrite ERISA jurisprudence from whole cloth. Exposed in this light, against Mattson's robust pleading, Defendants' Motion should be denied.

DATED this 4th day of November, 2022.

BYRNES KELLER CROMWELL LLP

By /s/ Paul R. Taylor
　　Paul R. Taylor, WSBA #14851
　　1000 Second Avenue, 38th Floor
　　Seattle, Washington 98104
　　Telephone: (206) 622-2000
　　Facsimile: (206) 622-2522
　　ptaylor@byrneskeller.com

　　Charles Field*
　　Cara Van Dorn*
　　**SANFORD HEISLER SHARP, LLP**
　　2550 Fifth Avenue, 11th Floor
　　San Diego, CA 92103
　　Telephone: (619) 577-4253
　　Facsimile: (619) 577-4250
　　cfield@sanfordheisler.com
　　cvandorn@sanfordheisler.com

　　David Sanford*
　　Meredith Firetog*
　　**SANFORD HEISLER SHARP, LLP**
　　1350 Avenue of the Americas, 31st Fl.
　　New York, NY 10019
　　Telephone: (646) 402-5650
　　dsanford@sanfordheisler.com
　　mfiretog@sanfordheisler.com

Shaun Rosenthal*
Ari B. Rubin*
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
Facsimile: (202) 499-5199
srosenthal@sanfordheisler.com
arubin@sanfordheisler.com

David McNamee*
**SANFORD HEISLER SHARP, LLP**
611 Commerce Street, Suite 3100
Nashville, TN 37203
Telephone: (615) 434-7019
***Attorneys for Plaintiff***

*\* Admitted pro hac vice*
*Attorneys for Plaintiffs and the Proposed Class*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 22

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on the 4th day of November, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

/s/ Paul R. Taylor
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
ptaylor@byrneskeller.com

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(B)(6)
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
(NO. 2:22-cv-00037-TSZ) - 23

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON  98104
(206) 622-2000