HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOANNA P. MATTSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MILLIMAN, INC.; THE BOARD OF DIRECTORS OF MILLIMAN, INC.; THE MILLIMAN INVESTMENT COMMITTEE, and its members; THE MILLIMAN INC. U.S. RETIREMENT COMMITTEE, and its members, Does 1-30,<br><br>Defendants. | NO. 2:22-cv-00037-TSZ<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**<br><br>**NOTED FOR HEARING:**<br>**December 2, 2022** |

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ)

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

I.      INTRODUCTION[1]

The Court's prior Order (Dkt. No. 43) ("Order") expressly held that to plausibly allege an ERISA-based claim that the WPS Funds were not prudent investments, Ms. Mattson must first identify "meaningful benchmark[s]" for the WPS Funds, *i.e.*, benchmarks with "similar aims, risks, and potential rewards." *Id.* at 2.  In *Evans v. Associated Banc-Corporation*, No. 21-C-60, 2022 WL 4638092, at *7 (E.D. Wis. Sept. 30, 2022), a decision Ms. Mattson relies upon in her Opposition, the Eastern District of Wisconsin held that investment products with different asset allocations do not constitute "meaningful benchmark[s]" even though they were "from the same broad Morningstar category."  The court correctly reasoned that "funds that invest as little as 50% in equities (common stocks) and funds that invest as much as 70% in equities−a range of 20%−would be expected to have very different returns and levels of risk, depending on the performance of the equity markets." *Id.*  And, in *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 282 (8th Cir. Oct. 12, 2022), the Eighth Circuit recently rejected an attempt to compare a fund with a "*value* strategy" to a fund with a "*growth* strategy," finding that funds with "contrasting investment styles" were "just different" and "using either as a benchmark for the other would neither be 'sound' nor 'meaningful.'"

Ms. Mattson's comparisons of the WPS Funds to the Morningstar Indices, Dow Jones Indices and the Comparator Funds fail for the same reason that the comparisons in *Matousek* and *Evans* failed.  As in *Matousek*, Ms. Mattson's purported comparators do not follow similar investment strategies as the WPS Funds.  The WPS Funds adhere to a managed volatility strategy, as was repeatedly disclosed to Plan participants who invested in the product.  Ms. Mattson's Opposition admits that the Morningstar Indices, the Dow Jones Indices and the Comparator Funds **do not** follow a similar investment strategy.  Moreover, as in *Evans*, the

---

[1] This Reply incorporates the defined terms in Defendants' Motion to Dismiss the First Amended Complaint Pursuant to Rule 12(b)(6) (Dkt. No. 47) ("Motion" or "Mot."). Ms. Mattson's Opposition (Dkt. No. 62) is referred to herein as the "Opposition" or "Opp."

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 1

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

Morningstar Indices, Dow Jones Indices and Comparator Funds have far different asset allocations—and, as a result, different returns and levels of risk—than the WPS Funds. In sum, the two indices and the Comparator Funds are not the "'apples to apples' comparison" that the Court previously advised was required to plausibly give rise to a prudence claim. Order at 3.

Further, the FAC fails to plausibly allege that the WPS Funds "substantially underperformed" in comparison to their Custom Indices. The Fund Fact Sheets demonstrate that the WPS Funds have performed as expected and tracked the Custom Indices. Moreover, contrary to Ms. Mattson's statement in her Opposition, the FAC only compares the WPS Funds' performance to the Custom Indices over a *five-year* time period, which courts have repeatedly held is insufficient to give rise to an ERISA-based prudence claim.

As a result, Ms. Mattson's second attempt through the FAC to plead an ERISA-based prudence claim fails.

## II. ARGUMENT

### A. The Morningstar Indices, the Dow Jones Indices and the Comparator Funds Are Not Meaningful Benchmarks for the WPS Funds.

The Morningstar Indices, Dow Jones Indices and Comparator Funds are not "meaningful benchmarks" for the WPS Funds. As a threshold matter, the Morningstar Indices, Dow Jones Indices and Comparator Funds follow fundamentally different investment strategies than the WPS Funds. A core component of the WPS Fund is its managed volatility strategy[2]—*i.e.*, the WPS Funds are affirmatively managed to specified volatility targets. *See* Mot. at 3-4. The WPS Funds manage volatility through the use of exchanged-traded futures contracts and other strategies to "hedge" against volatility. *See id.* This strategy was no secret. *Cf.* Opp. at 7. The

---

[2] Contrary to Ms. Mattson's argument, *see* Opp. at 6, the Court did ***not*** hold that the WPS Funds are not managed volatility funds. In dismissing Ms. Mattson's claims, the Court held that Ms. Mattson must "allege sufficient information with respect to her proposed benchmarks to establish an 'apples-to-apples' comparison" to the WPS Funds. Order at 3.

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 2

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

WPS Fund Fact Sheets[3] expressly describe this strategy in *five* separate places.  *See* Mot. Exs. 10-12.

Ms. Mattson's Opposition does not dispute, and thus concedes,[4] that the Morningstar Indices, the Dow Jones Indices and the Comparator Funds *do not* employ managed volatility strategies.  *See generally* Opp.  Indeed, Ms. Mattson does not argue that these indices and Comparator Funds are managed to specific volatility targets or that they manage volatility using exchange traded funds.  *See id.*

Despite the WPS Funds' clear and express strategy on managing volatility, Ms. Mattson asks the Court to disregard this key feature of the WPS Funds and rule that all target risk funds constitute meaningful benchmarks for one another.  Ms. Mattson claims that "all target risk funds, including the benchmarks, manage components of risk including volatility."  Opp. at 7 n.2.  But managing components of *risk* and managing a fund to meet a specified *volatility* target are not the same thing.  Ms. Mattson does not even attempt to argue otherwise.  *See id*. at 7.

As discussed in greater detail below, in addition to having different investment strategies than the WPS Fund, the Morningstar Indices, Dow Jones Indices and Comparator Funds also have far different asset allocations.  *See Evans*, 2022 WL 4638092, at *7; *Reetz v. Lowe's Cos. Inc.*, No. 5:18-CV-75, 2021 WL 4771535, at *55 (W.D.N.C. Oct. 12, 2021) ("It is unsurprising

---

[3] Ms. Mattson incorrectly claims that the WPS Fund Fact Sheets are "pitch materials" that should not be considered by the Court.  *See* Opp. at 1, 4-6, 7.  The WPS Fund Fact Sheets are prepared quarterly to report the performance of the Funds to the Plan participants (including Ms. Mattson) and others who ***already invested*** in WPS Funds.  The frivolousness of Ms. Mattson's argument is underscored by the fact that (i) the FAC specifically references the Fund Fact Sheets (*see, e.g.*, ¶¶ FAC 68, 71, 82, 110, 121, 143) and (ii) Ms. Mattson attached the December 31, 2021 Fund Fact Sheets to her Opposition to Defendants' original Motion to Dismiss.  *See* Dkt. No. 39, Ex. 2. Ms. Mattson does not contest the accuracy of the information or provide any further reasoning for why they could not be considered at this stage.  *Cf. Evans*, 2022 WL 4639082 at *5 (declining to consider fund fact sheets where the accuracy of the information was disputed).
[4] *See In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1090 (W.D. Wash. 2003) (Zilly, J.) (holding that failure to address an argument in opposition to a motion to dismiss was "a concession that this argument constitutes a valid reason for dismissal").

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 3

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

that equities, or funds with greater concentrations in equity, would generate greater returns when equities are performing exceptionally well.").

### a. Morningstar Indices.

Ms. Mattson all but concedes that the Morningstar Indices are not "meaningful benchmarks" for the WPS Funds. *See* Opp. at 15-16.

Ms. Mattson's Opposition does not dispute and, thus admits that, unlike the WPS Funds, the Morningstar Indices ***do not*** follow a managed volatility strategy. *Compare* Mot. at 3-5 *with* Opp. at 15-16. Further, Ms. Mattson's Opposition does not dispute that the Morningstar Indices have materially different equity allocations than the WPS Funds. *Compare* Mot. at 3-5 *with* Opp. at 15-16. Ms. Mattson's Opposition is entirely ***silent*** on this point, thereby conceding it.

As explained in the Motion, Ms. Mattson identified Morningstar Indices that are designed to benchmark the performance of funds that have materially ***higher*** equity allocations than the WPS Funds. For example, the WPS Conservative Fund, on average, has had a ***49.76%*** equity allocation. *See* Mot. Ex. 10 at 2. Ms. Mattson, however, has identified the Morningstar Moderate Target Risk Index as a comparator for the WPS Conservative Fund (FAC ¶¶ 155-57), even though that index is designed to track funds with ***50-70%*** equity allocations. *See id.* ¶ 157. As the court concluded in *Evans*, an investment product like the WPS Conservative Fund that invests just under 50% of its assets in equities would be expected to have different results than a Morningstar index for funds that invest up to 70% in equities—***a 20-point spread***. 2022 WL 4638092, at *7. As explained in the Motion, the spread between the equity allocations for the WPS Moderate Fund and WPS Growth Fund and the equity allocation for the Morningstar indices selected by Ms. Mattson are of similar magnitude.[5]

Evidently recognizing that the Morningstar Indices follow differently investment strategies and have materially different equity allocations than the WPS Funds, Ms. Mattson

---

[5] Ms. Mattson's argument that the WPS Growth Fund "invest[s] over 85%" of its portfolio to equity securities, Opp. at 16, is misleading. *See infra* n.8.

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 4

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

relies on characteristics that are common to all target risk funds to argue that the Morningstar Indices are "meaningful benchmarks" for the WPS Funds. *See* Opp. at 16 (claiming that the "Morningstar Aggressive Target Risk Index was created to represent funds which 'seek to provide both income and capital appreciation by investing in multiple asset classes, including stocks, bonds, and cash,' which is also an accurate description of the Aggressive Fund's aims"). Not only is Ms. Mattson's argument wrong,[6] these generic traits are insufficient to plausibly allege that the Morningstar Indices have the same aims, risks, and potential rewards as the WPS Funds. *See Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1152-53 (N.D. Cal. 2022) (holding that allegations that purported comparator funds "invest in global stocks and bonds" are insufficient to plausibly allege a "meaningful benchmark").

### b. Dow Jones Indices.

Ms. Mattson similarly admits that the Dow Jones Indices do not follow a managed volatility strategy. *Compare* Mot. at 3-5 *with* Opp. at 11-15. Ms. Mattson claims that the Dow Jones Indices are similar to the WPS Funds "in that they both target a given risk tolerance[.]" Opp. at 12. However, the same could be said of ***any*** target risk index.

Ms. Mattson is correct that by virtue of being a "target risk" index, the Dow Jones Indices track the performance of funds that manage risk. *See id*. But that does not mean that that the indices are managed to specified volatility targets or employ a hedging strategy. Far from a "factual fallacy" created by Milliman, Opp. at 13, the WPS Funds' managed volatility and hedging strategies were described to Plan participants as a central component of the Funds' investment strategy. *See* Mot. Exs. 10-12. Comparable managed volatility and hedging strategies are notably absent from the "pre-set investment portfolios" whose performance the

---

[6] The aim of the WPS Growth Fund is not simply to "provide both income and capital appreciation by investing in multiple asset classes, including stocks, bonds, and cash[.]" Opp. at 16. The aim of the WPS Growth Fund, as expressly stated in the Fund Fact Sheets, is to "provide capital growth and income ***consistent with a volatility target*** and its asset allocation." Mot. Ex. 12 at 4 (3/31/2016 WPS Growth Fund Fact Sheet) (emphasis added).

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 5

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

Dow Jones Indices measure. *See* Opp. at 13. Ms. Mattson's assertion that the WPS Funds and the Dow Jones Indices both "target a given risk tolerance, primarily" through asset allocation, *see* Opp. at 12, ignores that the WPS Funds were managed to specified volatility targets. *See* Mot. Exs. 10-12.

Ms. Mattson also admits that the Dow Jones Indices also have different equity allocations than the WPS Funds. *See* Opp. at 12 (acknowledging that the WPS Funds and Dow Jones Indices had differences in equity allocations ranging up to 10%). Moreover, the Dow Jones Indices are inapt comparators for the WPS Funds because they are designed to track portfolios that invest in "***U.S.*** equities markets." FAC ¶ 146 (emphasis added). In contrast, each WPS Fund includes an international component in their equity allocations—often between 6 and 13%. *See* Mot. Exs. 10-12, WPS Fund Fact Sheets (6.39-7.40% international equity allocation for the WPS Conservative Fund; 8.36-9.44% international equity allocation for the WPS Moderate Fund; and 10.50-12.53% international equity allocation for the WPS Growth Fund).

Because the WPS Funds follow a different investment strategy and have far different asset allocations than the Dow Jones Indices, Ms. Mattson resorts to arguing that the Dow Jones Indices are "meaningful benchmarks" for the WPS Funds because they are identified in the participant fee disclosures. Contrary to Ms. Mattson's argument, the fact that the Dow Jones Indices are identified in the WPS Funds' disclosures does not mean Milliman is "bound to this representation." Opp. at 11-12 n.5. As explained in the Motion, the legal requirement to include an index in a participant fee disclosure does not necessarily make that same index a "meaningful benchmark" for purposes of assessing the prudence of a fiduciary's decision to maintain a fund in a plan's investment line up. *See* Mot. at 6 n.7; *see also Wilcox v. Georgetown Univ.*, No. 18-422, 2019 WL 132281, at *11 (D.D.C. Jan. 8, 2019) (rejecting argument that a market index identified in a participant fee disclosure was an appropriate benchmark because doing so would

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 6

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

"oversimplif[y] and misstate[] the facts and governing law"). The Opposition offers no persuasive reason why the Court should not follow *Wilcox*.[7]

### c. Comparator Funds

Ms. Mattson's effort to compare the WPS Funds to particular target risk funds fares no better. Ms. Mattson claims that the Comparator Funds have comparable equity allocations to the WPS Funds, but her Opposition does not dispute, and thus admits, that certain of her purported "comparators" allocated as much as 10% more of their assets to equity than the WPS Funds. *See* Opp. at 16-18.[8]

Ms. Mattson also claims that the Comparator Funds are "meaningful benchmarks" for the WPS Funds because they "have the primary investment aim of achieving the highest total return consistent with the investor's level of risk tolerance . . . , which includes managing the funds' volatility." Opp. at 16. The same can be said of *any* target risk fund. These generic statements do not establish that the Comparator Funds are "meaningful benchmarks" for the WPS Funds.

The WPS Funds' aims are more focused and distinct than those of the target risk funds Ms. Mattson identifies as potential comparators. The WPS Funds seek to not only achieve a certain level of investment risk **but also** manage the extent to which the Funds' value will fluctuate within a specified target. *See* Mot. at 5. As both the Eighth and Sixth Circuits have

---

[7] The Court previously held that the Dow Jones Aggressive Target Risk Portfolio Index—which is identified in the participant fee disclosure as a benchmark for the WPS Growth and Moderate Funds—"appear[s] to be an inappropriate comparator for at least one of the funds at issue." Order at 3 n.2. Following this guidance, Ms. Mattson has effectively conceded that the Dow Jones Aggressive Target Risk Portfolio Index is not a "meaningful benchmark" for the WPS Moderate Fund. *See* Opp. at 11-12 n.5.

[8] Ms. Mattson's claim that the WPS Growth Fund allocated 87% of its assets to equities, *see* Opp. at 17, is misleading. Ms. Mattson cherry-picks a single quarter where the equity allocation of the WPS Growth Fund reached 87%. *See* FAC ¶ 71 (alleging that the WPS Growth Fund allocated 87% to equities as of 12/31/2021). During the class period, the WPS Growth Fund *on average* allocated 84% of its assets to equity, and its equity allocation ranged from 75.86 % to 87.06%. *See* Mot. Ex. 12 at 2.

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 7

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

recently held, comparator funds with different investment styles and strategies are not "meaningful benchmarks." *See Matousek*, 51 F.4th at 282 (rejecting comparisons between a fund with a "*value* strategy" to a fund with a "*growth* strategy"); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022) (holding comparator funds were "inapt comparators" because "each fund has distinct goals and distinct strategies"). The contrasting investment styles of Ms. Mattson's Comparator Funds, which seek only to match a certain level of risk tolerance, and the WPS Funds, which seek to manage volatility to specified targets, makes the Comparator Funds "just different." *Matousek*, 51 F.4th at 282.

Ms. Mattson claims that the Comparator Funds are "meaningful benchmarks" for the WPS Funds because their historic volatility levels over the alleged class period are comparable to the WPS Funds' volatility targets. *See* Opp. at 17-18. This observation made with the benefit of 20/20 hindsight does not save her claim from dismissal. When assessing a duty of prudence claim, courts "judge a fiduciary's actions based on information available to the fiduciary ***at the time of each investment decision*** and not from the vantage point of hindsight[.]" *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) (emphasis added). The fact that Ms. Mattson's Comparator Funds ultimately had volatility levels during the class period similar to those of the WPS Funds was not information available to Defendants at the time they made the decision to retain the WPS Funds in the Plan's investment line up.[9] It also does not follow that funds that were

---

[9] Similarly, a participant wishing to target a certain volatility level would not have known to select any of Ms. Mattson's Comparator Funds because they do not list a volatility rate on their fact fund sheets. In contrast, the Milliman Plan offers a volatility-managed vehicle, which, in combination with other investment options, offers the opportunity to build an allocation of retirement investments tailored to each participant's personal tolerance for risk and volatility. *See CommonSpirit*, 37 F.4th at 1167 ("Each person has a distinct risk profile[.]"). By challenging the WPS Funds as imprudent, Ms. Mattson is essentially arguing that the Plan was obligated to offer options with more volatility. The Plan's decision to provide options with more conservative features does not state a breach of prudence claim "regardless of whether some perform better than others." *Id.* at 1169.

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 8

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

*affirmatively* managed to specified volatility targets—such as the WPS Funds—and funds which, in hindsight, ultimately happened to have similar volatility levels—such as the Comparator Funds—followed a similar investment strategy. Accordingly, Ms. Mattson's allegations regarding the historical volatility levels of the Comparator Funds do not plausibly allege that they are "meaningful benchmarks" for the WPS Funds.

\*\*\*

In sum, the WPS Funds employ a distinct investment strategy—the Funds were affirmatively managed to provide capital growth and income consistent with specified volatility targets and the Funds' asset allocations. *See* Mot. Exs. 10-12. Comparing the performance of the WPS Funds to indices and funds that follow different investment strategies and have different asset allocations does not give rise to an inference that Defendants were imprudent when they decided to retain the WPS Funds as investment options in the Plan's investment line up. Ms. Mattson's comparison of "apples" and "oranges" does not plausibly allege a prudence claim.

**B. Ms. Mattson Does Not Plausibly Allege That the WPS Funds Substantially Underperformed the Custom Indices.**

Ms. Mattson has not plausibly alleged that the WPS Funds *substantially* underperformed over a lengthy time period in comparison to the Custom Indices. Her comparisons to the Custom Indices accordingly fail to plausibly allege a prudence claim. *See, e.g.*, *Gonzalez v. Northwell Health Inc.*, No. 20-cv-3256, 2022 WL 4639673, at \*6-8 (E.D.N.Y. Sept. 30, 2022) (granting motion to dismiss where the plaintiff failed to allege "consistent" and "substantial" underperformance).

Ms. Mattson argues that the WPS Funds "*in their first five years in the Plan* [i.e., 2013 through 2017] significantly underperformed *all meaningful benchmarks*." Opp. at 1 (emphasis added). The argument is unsupported by the allegations in the FAC, which only address the

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 9

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

performance of the WPS Funds relative to the Custom Indices from January 1, 2016 through December 31, 2021. *See* FAC ¶¶ 190, 197, 204.[10] As identified in the Motion, alleged underperformance over a five-year period is insufficient to plausibly allege a prudence claim. Mot. at 7 (discussing *CommonSpirit*, 37 F.4th at 1166-67). *See also Davis v. Salesforce.com, Inc.*, No. 20-cv-1753, 2020 WL 5893405, at *4 (N.D. Cal. Oct. 5, 2020) ("allegations based on five-year returns are not sufficiently long-term to state a plausible claim of imprudence") (internal quotation marks omitted); *Dorman v. Charles Schwab Corp.*, No. 17-cv-285, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (characterizing five years of underperformance as "relatively short" and insufficient to support claim that funds "persistent[ly] or materially" underperformed); *Wehner v. Genentech Inc.*, No. 20-cv-6894, 2021 WL 507599, at *9 (N.D. Cal. Feb. 9, 2021) (underperformance based on annual returns over three- and five-year periods insufficient to plausibly allege a prudence claim).[11]

Ms. Mattson cites to *Henderson v. Emory University*, 252 F. Supp. 3d 1344, 1351 (N.D. Ga. 2017) to support her claim that "[c]ourts have found pleading sufficient to defeat a motion to dismiss where a plaintiff alleged underperformance relative to a range of comparators over long periods of time." Opp. at 10-11. However, in *Henderson*, the plaintiff alleged underperformance over one-, five- and ten-year periods. 252 F. Supp. 3d at 1351. Ms. Mattson's citation to *Snyder v. United Health Group, Inc.*, Opp. at 9, is equally unpersuasive.

---

[10] The Opposition also makes no reference to the WPS Funds' performance relative to the Custom Indices prior to January 1, 2016. *See* Opp. at 8-11. By contrast, Ms. Mattson alleges that the WPS Funds underperformed in comparison to the Morningstar Indices, the Dow Jones Indices and the Comparator Funds over a nearly 10-year time period, *i.e.*, from January 1, 2013 (the date the investments were introduced to the Plan) through December 31, 2021. *See* FAC ¶¶ 188, 190, 195, 197, 202, 204; *see also* Opp. at 12, 18.

[11] Ms. Mattson incorrectly argues that *Genentech* is inapposite because it addressed comparisons between actively and passively-managed funds. *See* Opp. at 20. The *Genentech* court explicitly held that the plaintiff failed to state an imprudence claim predicated on defendants' retention of the challenged funds based on alleged underperformance based on annual returns over three- and five- year periods. *See* 2021 WL 507599, at *9.

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 10

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

The plaintiff in *Snyder* alleged underperformance "over the course of, not only the Class Period, but eleven years in total." No. CV 21-1049, 2021 WL 5745852, at *3 (D. Minn. Dec. 2, 2021).

Even looking at a five-year history, all three of the WPS Funds reported annualized returns were better than or within 0.80 percent of the Custom Indices. *See* Mot. at 9-11. This "small disparity in performance relative to its benchmark does not support the inference that [d]efendants were imprudent" to retain the WPS Funds. *Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019); *see also Cho v. Prudential Ins. Co. of Am.*, No. 19-19886, 2021 WL 4438186, at *9-10 (D.N.J. Sept. 27, 2021) (granting motion to dismiss where the plaintiff "admit[ted] that on several occasions the relevant funds outperformed their benchmarks" and only underperformed between 0.07% and 3.71%); *Birse v. CenturyLink, Inc.*, No. 17-cv-2872, 2019 WL 1292861, at *5 (D. Colo. Mar. 20, 2019) (holding that "relative underperformance is insufficient to state a breach of fiduciary duty claim"); *White v. Chevron Corp.*, No. 16-cv-793, 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016) (allegations that a fund's price dropped 2-6% in a six-year period did not state a claim for breach of fiduciary duty).

Moreover, as previously explained, the WPS Funds' strategy has been highly effective in protecting participants' retirement savings, including in the highly volatile markets in 2019 and 2022. *See* Mot. at 9-11.[12] Ms. Mattson's comparison of the cumulative performance of the WPS Funds to the Custom Indices from the beginning to the end of class period, *see* Opp. at 9, incorrectly assumes that Plan participants were locked into investing in the WPS Funds during

---

[12] Ms. Mattson's argument that the Court should not consider the September 30, 2022 WPS Fund Fact Sheets, *see* Opp. at 5, is a transparent attempt to exclude updated performance data that undercuts her claims. The class period for Ms. Mattson's claims is January 13, 2016 "to the date of judgment," FAC ¶ 16—making updated performance data relevant to the disposition of her claims. *See CommonSpirit*, 37 F.4th 16 1168 ("The district court fairly considered the more recent data because it was central to [the plaintiff's] claim, publicly available, and judicially noticeable."). The September 30, 2022 Fund Facts Sheets demonstrate that, over the prior five-year period, the WPS Funds performed within 2.62% of their Custom Indices. *See* Mot. Exs. 13-15.

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 11

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

the entire class period and could not change their investments, which is not how 401(k) plans operate. Plan participants could move their money into and out of the WPS Funds at any time based on, among other things, their personal views of what was happening in the economy and the markets and, in light of those views, whether a managed volatility strategy was a strategy they wanted to follow at that time. There is no dispute that, during the class period, the WPS Funds preserved the capital investments made by participants who made the decision to invest in the WPS Funds, especially in periods of market volatility. Ms. Mattson's theory of the case would deprive participants of the option to invest in the WPS Funds at any time by requiring Defendants to remove the WPS Funds from the Plan's investment line up as of January 1, 2016.

Finally, Ms. Mattson argues "it is telling that none of the Custom Indices focuses on volatility" and the Custom Indices "do not use hedging strategies or exchange traded future contracts and are not 'managed volatility' benchmarks." Opp. at 7, 9. Even if true, the point is irrelevant. It is undisputed that the investment manager for the WPS Funds (American Trust f/k/a Unified Trust) selected the Custom Indices as a reference point. It would have been disingenuous for anyone to argue that, having been selected by the investment manager, the Custom Indices are not a relevant data point. The comparison of the WPS Funds to that data point confirms that the WPS Funds did not substantially underperform the Custom Indices.

At most Ms. Mattson has identified certain periods in which the WPS Funds delivered slightly lower returns than the Custom Indices. Her allegations do not plausibly establish substantial underperformance compared to a meaningful benchmark.

### III.   CONCLUSION

For the reasons stated above, Milliman respectfully requests that the prudence and monitoring claims in Counts I and II of the First Amended Complaint be dismissed with prejudice.

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 12

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

**ATTORNEY FOR DEFENDANTS**

By *s/ Michael J. Prame*
  Michael J. Prame (admitted *pro hac vice*)
  Kara P. Wheatley (admitted *pro hac vice*)
  Rachael Hancock (admitted *pro hac vice*)
  GROOM LAW GROUP, CHARTERED
  1701 Pennsylvania Ave., NW, Suite 1200
  Washington, DC 20006
  Telephone: (202) 857-0620
  mprame@groom.com
  kwheatley@groom.com
  rhancock@groom.com

  Gordon & Rees Scully Mansukhani, LLP
  Sarah N. Turner, WSBA #37748
  701 Fifth Avenue Suite 2100
  Seattle, Washington 98104
  Telephone: (206) 695-5115
  sturner@grsm.com

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (2:22-CV-0037-TSZ) - 13

**GORDON REES SCULLY MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822

# **CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2022, I electronically filed the foregoing document entitled with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following registered participants:

Paul R. Taylor, WBSA #14851
ptaylor@byrneskeller.com

Ari B. Rubin (admitted pro hac vice)
arubin@sanfordheisler.com

Cara Van Dorn (admitted pro hac vice)
cvandorn@sanfordhesiler.com

Charles Field (admitted *pro hac vice*)
cfield@sanfordheisler.com

David McNamee (admitted pro hac vice)
dmcnamee@sanfordheisler.com

David Sanford (admitted pro hac vice)
dsanford@sanfordheisler.com

Meredith Firetog (admitted pro hac vice)
mfiretog@sanfordheisler.com

Shaun Rosenthal (admitted *pro hac vice*)
srosenthal@sanfordheisler.com

*/s/ Michael J. Prame*
Michael J. Prame

REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS (2:22-CV-0037-TSZ) - 14

**GORDON REES SCULLY
MANSUKHANI, LLP**
701 Fifth Avenue, Suite 2100
Seattle, WA  98104
Telephone: (206) 695-5115
Facsimile: (206) 689-2822