UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOANNA P. MATTSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MILLIMAN, INC., et al.,<br><br>Defendants. | C22-0037 TSZ<br><br>MINUTE ORDER |

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1) Defendants' motion to exclude the opinions and testimony of Horacio A. Valeiras regarding damages, docket no. 119, and Defendants' motion to exclude the opinions and testimony of Arthur B. Laffer, Ph.D., docket no. 120, are both DENIED.

Expert opinion testimony is admissible if the witnesses are qualified to testify as an expert, their knowledge will help the fact finder determine an issue relevant to the case, their testimony is based on sufficient data, and their testimony is the product of reliable principles and methods that have been reliably applied to the facts of the case. *See* Fed. R. Evid. 702. Federal Rule of Evidence 702 "assign[s]to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). This "gatekeeping obligation" applies to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 149 (1999). In this case, both experts are well qualified, and Defendants' challenges relate to only the relevance and reliability of the experts' opinions. "The test of reliability is flexible." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (citation omitted). Courts have "broad latitude" in evaluating an expert's reliability, including in determining what constitutes "reasonable

MINUTE ORDER - 1

measures of reliability in a particular case." *Kumho Tire*, 526 U.S. at 152–53. Expert testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experiences of the relevant discipline." *City of Pomona*, 750 F.3d at 1044 (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)). The relevance, or "fit," determination evaluates whether the expert's testimony relates to an issue in the case and whether the testimony will help the trier of fact in resolving the case. *Daubert*, 509 U.S. at 591. Rule 702 and *Daubert* are interpreted as favoring admissibility, and the relevance and reliability of expert testimony must be evaluated accordingly. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021) (citations omitted). *Daubert*'s gatekeeping function is intended to protect juries, and "there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (collecting cases). This case will proceed to trial without a jury, and the Court can weigh the evidence at trial. The fact that expert opinion evidence might be impeached does not mean that it should be excluded. *See City of Pomona*, 750 F.3d at 1044; *Primiano*, 598 F.3d at 564 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

      (a)    Defendants challenge the reliability of Valeiras's damages opinions and anticipated testimony on two grounds, neither of which warrant exclusion.

           (i)    Defendants contend that Valeiras's damages calculations and testimony relating to the Plan[1] are unreliable because his "damage models were not tailored to the only component of MMRS that he challenged, the capital protection component." Reply at 4 (docket 133). Defendants assert that damages, if any "must be tailored to the accumulation phase of retirement savings." *Id.* at 7. In response, Plaintiff contends that Valeiras incorporated both the capital protection and volatility management components into his calculations because Defendants employed both components of the Overlay together. Valeiras Dep. at 35:6–11, Ex. 1 to Field Decl. (docket no. 129-1); *see also* Defs.' Mot. Summ. J. at 5 (docket no. 113) (explaining the MMRS); Schenck Decl. at ¶ 4 (docket no. 117) (same). Valeiras's damages calculations might be reliable because he incorporated the Overlay into his calculations in the same way it might have been

---

[1] "The Plan" refers to the Milliman, Inc. Profit Sharing and Retirement Plan, a 401(k) plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). "The Funds" refers to the Unified Trust Wealth Preservation Strategy Target Growth Fund, the Unified Trust Wealth Preservation Strategy Target Moderate Fund, and the Unified Trust Wealth Preservation Strategy Target Conservative Fund, whose inclusion in the Plan is challenged by Plaintiff. "The Overlay" refers to the "Milliman Managed Risk Strategy" ("MMRS"), a hedging strategy consisting of capital protection and volatility management components that was applied to the Funds to achieve a target investment risk profile. *See* Defs.' Mot. Summ. J. at 5 (docket no. 113) (explaining the MMRS).

MINUTE ORDER - 2

employed in practice by Defendants. Moreover, although Valeiras testified that the volatility management component was problematic, he also testified that the Overlay in its entirety harmed the Plan. Valeiras Dep. 34:18–23, 35:6–11, 59:16–60:7, 62:14–63:4, Ex. 1 to Field Decl. (docket no. 129-1); Valeiras Expert Report at 22, Ex. A to Valeiras Decl. (docket no. 128-1) (stating that the Overlay's "efforts to manage volatility were too costly and ineffective"). Valeiras's testimony is not, therefore, necessarily rendered unreliable because he included the volatility management component of the Overlay in his damages calculations.

    (ii) Defendants also challenge Valeiras's inclusion of the Funds' investors who were in the draw down phase in his damages calculations. Plaintiff responds that Valeiras's opinion is relevant because ERISA damages include all damages incurred by the Plan. *See Tibble v. Edison Int'l*, Case No. CV 07-5359, 2017 WL 3523737, at *13–14 (C.D. Cal. Aug. 16, 2017) (finding that "the returns of the Plan as a whole" were a reasonable approximation of losses to the plan). Defendants' challenges to Valeiras's testimony go to weight and not admissibility. The amount of damages, if any, can best be determined by the Court after considering the evidence at trial.

  (b) Defendants' motion to exclude the opinions and testimony of Dr. Laffer raises four issues, none of which establish inadmissibility.

    (i) Defendants move to exclude Dr. Laffer's testimony regarding whether the Funds should have been removed from the Plan prior to January 2016. Specifically, they argue that the performance history was not sufficiently long enough for Dr. Laffer to opine that Defendants should have removed the Funds from the Plan prior to January 2016. The evaluation of ERISA breach of fiduciary duty claims is fact intensive. *See Mills v. Molina Healthcare, Inc.*, Case No. 2:22-cv-1813, 2023 WL 6538381, at *6, --- F. Supp. 3d --- (C.D. Cal. Sep. 27, 2023) (citations omitted). Given the factual nature of the inquiry, other courts' rejection of ERISA claims based on only three years of performance data does not mean that Dr. Laffer's opinions are unreliable. Such a challenge, instead, goes to the weight to be afforded Dr. Laffer's testimony, and not whether it is admissible.

    (ii) Defendants move to exclude Dr. Laffer's testimony on any conduct, including the alleged "seeding" of the Funds with Plan money in 2012, that predates January 2016 as being barred by ERISA's statute of repose. Plaintiff contends that such testimony is admissible because Defendants' conduct constituted a singular, ongoing breach. 29 U.S.C. § 1113(1) bars any ERISA action brought more than six years after "the date of the last action which constituted a part of the breach or violation." The "duty to exercise prudence in selecting investments at the outset" of the Plan exists "separate and apart from" the duty to prudently monitor Plan investments and to remove any underperforming investments. *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015). Defendants' selection of the Funds, regardless of whether such selection was prudent or not, is distinct from the Plan's retention of the Funds. Notwithstanding that selection and

MINUTE ORDER - 3

retention are not a continuous breach, the Court will not exclude Dr. Laffer's testimony about Defendants' selection of the Funds. ERISA fiduciaries have an ongoing duty to monitor their plan's investments. What that monitoring entails, however, will depend on the specific circumstances of the plan, the plan's investments, the nature of the plan sponsor, and other factors. Here, the process used by the Plan in selecting the Funds could inform whether the Plan acted prudently in subsequently retaining the Funds. Dr. Laffer's testimony on the selection of the Funds may, therefore, be relevant. Plaintiff will be allowed to offer Dr. Laffer's testimony regarding the Plan's initial investment in the Funds in support of Plaintiff's claim that Defendants acted imprudently in retaining the Funds.

(iii)   Defendants contend that Dr. Laffer's opinions regarding the Plan's investment policy statement ("IPS") are contrary to law. Dr. Laffer is being offered as an expert on whether the "level of prudence and fiduciary responsibility Defendants demonstrated towards the management of the Plan and its participants" was proper. Laffer Report at ¶ 1 (docket no. 131-1). To that end, Dr. Laffer's testimony regarding the Plan's IPS "may well be useful" to the Court in evaluating whether Defendants complied with their fiduciary obligations. *See Marshall v. Northrop Grumman Corp.*, Case No. 2:16-cv-6794, 2019 WL 6354373, at *2 (C.D. Cal. Oct. 16, 2019). Moreover, because this case will be a bench trial, Dr. Laffer's testimony "is not prejudicial, as there is 'no danger that a jury might give too much credence.'" to his testimony. *Id.* (quoting *Flores v. Arizona*, 516 F.3d 1140, 1166 (9th Cir. 2008), *rev'd on other grounds*, *Horne v. Flores*, 557 U.S. 433 (2009)).

(iv)   Defendants argue that Dr. Laffer's remaining opinions are not properly supported and are mere *ipse dixit*. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Determining whether "an analytical gap between the data and the opinion proffered" is "simply too great" falls squarely within the Court's discretion. *Id.* at 146–47. "Where an expert offers non-scientific testimony, 'reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind' the testimony." *Porter v. Martinez*, 68 F.4th 429, 444 (9th Cir. 2023) (quoting *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004)). Dr. Laffer has substantial knowledge and experience in evaluating investments and advising retirement plans and their fiduciaries, as well as other trusts. *See* Laffer Report at ¶¶ 3–11 (docket no. 131-1). His knowledge and experience form a sufficiently reliable basis for his expert testimony. Defendants contend that Dr. Laffer's opinions are unreliable because he "does not identify any surveys, studies, research or other documentation that support his opinions," Mot. at 9 (docket no. 120), but this argument goes to the weight to be afforded to his testimony and not to its admissibility. Similarly, Defendants' assertion that Dr. Laffer's experience with other types of retirement plans and fiduciary investors is insufficient to support his opinions regarding the Funds also goes to the weight of his

MINUTE ORDER - 4

testimony.  Because Dr. Laffer grounds his testimony in his extensive experience in the investment industry and as a fiduciary advisor, the Court concludes that these opinions cannot be excluded prior to trial.

   (2) The Clerk is directed to send a copy of this Minute Order to all counsel of record.

  Dated this 30th day of January, 2024.

              Ravi Subramanian
              Clerk

              s/Laurie Cuaresma
              Deputy Clerk

MINUTE ORDER - 5